708 S.E.2d 524

**Timothy E. DAVIES, Appellant**

v.

**WEST VIRGINIA OFFICE OF the INSURANCE COMMISSIONER,**

and

**Alcan Rolled Products–Ravenswood, LLC, Appellees.**

No. 35550.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2011.

Decided April 1, 2011.

**332**

Edwin H. Pancake, Charleston, WV, for the Appellant.

H. Toney Stroud, Steptoe & Johnson PLLC, Charleston, WV, for the Appellee, Alcan Rolled Products–Ravenswood, LLC.

DAVIS, Justice:

In this appeal from a decision of the Workers' Compensation Board of Review (hereinafter referred to as "the Board of Review"), Timothy E. Davies, claimant below and appellant (hereinafter referred to as "Mr. Davies"), appeals his award of 2% permanent partial disability (hereinafter referred to as "PPD") for carpal tunnel syndrome. Mr. Davies contends that a proper application of the relevant Workers' Compensation rule, W. Va.C.S.R. § 85–20–64.5 (2004), results in his entitlement to a 6% PPD award. We find that W. Va.C.S.R. § 85–20–64.5 is invalid as it applies in this case. Therefore, we reverse the 2% PPD award granted by the Board of

Review, and reinstate the 6% PPD award granted to Mr. Davies by the Workers' Compensation Office of Judges.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Davies, a millwright employed by Alcan Rolled Products—Ravenswood, LLC, the appellee (hereinafter referred to as "Alcan"), developed carpal tunnel syndrome in his right wrist in the course of and resulting from his employment. His subsequently-filed Workers' Compensation claim was ruled compensable on June 5, 2007. Mr. Davies underwent surgery on September 5, 2007. After a period of recuperation and physical therapy, he returned to work on November 19, 2007. The Claims Administrator for Alcan, who is self-insured, referred Mr. Davies to Dr. Paul Bachwitt for a PPD evaluation. Dr. Bachwitt examined Mr. Davies on January 3, 2008, and concluded that he had reached his maximum medical improvement. Applying the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed.1993)[1] (hereinafter referred to as "the AMA *Guides* Fourth"), Dr. Bachwitt determined that Mr. Davies suffered a 6% whole-person impairment as a result of his carpal tunnel syndrome. Dr. Bachwitt used Table 16 of the AMA *Guides* Fourth to calculate Mr. Davies' impairment rating.[2] However, Dr. Bachwitt then interpreted paragraph 64.5 of the Workers' Compensation rule titled "Ranges of partial disability awards for common injuries and diseases." W. Va. C.S.R. § 85–20–64.5.[3] This rule limits the

---

1. Rule 64.1 of the Workers' Compensation rules requires that "[p]ermanent partial disability assessments shall be determined based upon the range of motion models contained in the Guides Fourth." W. Va.C.S.R. § 85–20–64.1. The rules further specify that " 'Guides Fourth' means the 'Guides to the Evaluation of Permanent Impairment,' (4th ed.1993)." W. Va.C.S.R. § 85–20–3.8 (2004).

2. "Table 16" refers to the table found on page 57 of the AMA *Guides* Fourth that is titled "Upper Extremity Impairment Due to Entrapment Neuropathy." The order issued in this matter by the Workers' Compensation Office of Judges (hereinafter referred to as "the OOJ"), explained that

the AMA *Guides* Fourth provide two alternative methods of assessing the level of impairment resulting from carpal tunnel syndrome. According to the OOJ, "[o]ne method involves detailed measurements of sensory loss and/or motor deficit for individual fingers and areas of the hand which are then adjusted by a factor provided in Table 15," while "[t]he second method involves using Table 16 and applying the subjective degree of severity of involvement of each major nerve." Because the Table 15 method was not used in calculating Mr. Davies' impairment, we will limit our analysis in this opinion to Table 16.

3. W. Va.C.S.R. § 85–20–64 establishes ranges of PPD awards for a variety of "common injuries

PPD award that may be granted to a claimant for carpal tunnel syndrome impairment to 0%—6% for each affected hand. Dr. Bachwitt interpreted this rule, and concluded that it allowed awards of 1% to 2% for mild carpal tunnel syndrome, 3% to 4% for moderate carpal tunnel syndrome, and 5% to 6% for severe carpal tunnel syndrome. Because Mr. Davies' 6% whole person impairment under the AMA *Guides* Fourth was indicative of only mild carpal tunnel syndrome, Dr. Bachwitt recommended he be awarded 2% PPD pursuant to W. Va.C.S.R. § 85–20–64.5.

Accordingly, by order entered January 21, 2008, Alcan's claims administrator granted Mr. Davies a 2% PPD award for his carpal tunnel syndrome. Mr. Davies appealed the award. The Workers' Compensation Office of Judges (hereinafter referred to as "the OOJ") reversed. The OOJ found that W. Va.C.S.R. § 85–20–64.5 contained no language to support the interpretation given it by Dr. Bachwitt. By order entered dated January 29, 2009, the OOJ granted Mr. Davies a 6% PPD award based upon Dr. Bachwitt's conclusion, prior to his application of W. Va.C.S.R. § 85–20–64.5, that Mr. Davies had sustained a 6% whole-person impairment under Table 16 of the AMA *Guides* Fourth.[4] Alcan then appealed. By order dated September 2, 2009, the Board of Review reversed the OOJ and reinstated the claims administrator's award of 2% PPD. It is from this order that Mr. Davies now appeals.

## II.

## STANDARD OF REVIEW

The general standard for this Court's review of decisions made by the Board of Review is set out in W. Va.Code § 23–5–15(b) and (d) (2005) (Repl.Vol.2010), which state:

(b) In reviewing a decision of the board of review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

. . . .

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision.

and diseases," including carpal tunnel syndrome impairment, and sets out the manner in which PPD assessments shall be conducted. W. Va. C.S.R. § 85–20–64.1. Pertinent to the issue presented in the case *sub judice*, W. Va.C.S.R. § 85–20–64 directs, in relevant part:

64.1 Pursuant to W. Va.Code § 23–4–3b(b), the Commission or Insurance Commissioner, whichever is applicable, hereby adopts the following ranges of permanent partial disability for common injuries and diseases. Permanent partial disability assessments shall be determined based upon the range of motion models contained in the Guides Fourth. Once an impairment level has been determined by range of motion assessment, that level will be com-

pared with the ranges set forth below. Permanent partial disability assessments in excess of the range provided in the appropriate category as identified by the rating physician shall be reduced to the [sic] within the ranges set forth below:

. . . .

64.5. Carpal Tunnel Syndrome Impairment: An injured worker who can otherwise show entitlement to a permanent partial disability award for carpal tunnel syndrome shall be eligible to receive a permanent partial disability award of 0%–6% in each affected hand. W. Va.C.S.R. § 85–20–64 (2004).

4. *See* note 2, *supra*.

■ This statutorily-designated standard for our review is in accord with this Court's prior holding that, "[w]hen it appears from the proof upon which the [Workers' Compensation Board of Review] acted that its finding was plainly wrong[,] an order reflecting that finding will be reversed and set aside by this Court." Syl. pt. 5, *Bragg v. State Workmen's Comp. Comm'r*, 152 W.Va. 706, 166 S.E.2d 162 (1969).

■ Finally, to the extent that our resolution of this matter requires us to interpret provisions contained in the West Virginia Code of State Rules, our review is *de novo*. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995). *See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With the forgoing standards in mind, we will address the issue raised in this appeal.

## III.

## DISCUSSION

Mr. Davies argues that the Board of Review erred in reversing the OOJ's decision that granted him a 6% PPD award. According to Mr. Davies, the OOJ correctly concluded that Dr. Bachwitt improperly interpreted W. Va.C.S.R. § 85–20–64.5. Alcan, on the other hand, contends that the Board of Review was correct in reversing the OOJ and

granting Mr. Davies a 2% PPD award based upon Dr. Bachwitt's calculations.

To resolve the issue raised in this appeal, we must consider the proper application of W. Va.C.S.R. §§ 85–20–64.1 and 64.5, which state:

64.1 Pursuant to W. Va.Code § 23–4–3b(b), the Commission or Insurance Commissioner, whichever is applicable, hereby adopts the following ranges of permanent partial disability for common injuries and diseases. Permanent partial disability assessments shall be determined based upon the range of motion models contained in the Guides Fourth. Once an impairment level has been determined by range of motion assessment, that level will be compared with the ranges set forth below. Permanent partial disability assessments in excess of the range provided in the appropriate category as identified by the rating physician shall be reduced to the [sic] within the ranges set forth below:

. . . .

64.5. Carpal Tunnel Syndrome Impairment: An injured worker who can otherwise show entitlement to a permanent partial disability award for carpal tunnel syndrome shall be eligible to receive a permanent partial disability award of 0%–6% in each affected hand.

■ Upon our review of the foregoing sections, and for the reasons more fully set out in our discussion below, we find them to be ambiguous as they pertain to carpal tunnel syndrome. This ambiguity is demonstrated by the different applications of the rule advocated in these proceedings,[5] and by the observations of the OOJ.[6]

> The language used in § 64.1 is somewhat problematic. First, it requires the use of the "range of motion assessment" methodology. However, "range of motion assessment" is applicable only to the spinal injury chapter and is not a part of the carpal tunnel evaluation method or, for that matter, the psychiatric impairment determination process. Second, there is the problem with an apparent typographical error when the regulation requires that excess impairment be reduced "to the within the" ranges set forth.

**5.** We note, however, that "[t]he fact that parties disagree about the meaning of a statute [or administrative rule] does not itself create ambiguity or obscure meaning." *T. Weston, Inc. v. Mineral Cnty.*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006) (citing *Deller v. Naymick*, 176 W.Va. 108, 112, 342 S.E.2d 73, 77 (1985), and *Resseger v. Battle*, 152 W.Va. 216, 220, 161 S.E.2d 257, 260 (1968)).

**6.** With regard to the ambiguity of W. Va.C.S.R. § 85–20–64 as it pertains to carpal tunnel syndrome, the order rendered by the OOJ commented, in relevant part:

■ Because the rule is ambiguous, we may endeavor to construe it to give effect to the intent of the Legislature in authorizing the same: " '[a]ny rules or regulations drafted by an agency must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation. . . .' " Syl. pt. 7, in part, *Simpson v. West Virginia Office of Ins. Comm'r*, 223 W.Va. 495, 678 S.E.2d 1 (2009) (quoting Syl. pt. 4, *Maikotter v. University of West Virginia Bd. of Trs./West Virginia Univ.*, 206 W.Va. 691, 527 S.E.2d 802 (1999)). *See also* Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute [or administrative rule] that is ambiguous must be construed before it can be applied."); Syl. pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute [or administrative rule] is warranted only if the statute [or rule] is ambiguous and the initial step in such interpretive inquiry is to ascertain the legislative intent.").

W. Va.C.S.R. § 85–20–64.5 is authorized by W. Va.Code § 23–4–3b(b) (2005) (Repl. Vol.2010), which directs the Workers' Compensation Board of Managers to "promulgate a rule establishing the process for the medical management of claims and awards of disability which includes, but is not limited to, *reasonable* and standardized guidelines and parameters for . . . range of permanent partial disability awards for common injuries and diseases. . . ." (Emphasis added). While W. Va.C.S.R. § 85–20–64.5 plainly sets out a standardized range of PPD awards for carpal tunnel syndrome impairment, we note that such parameters must be reasonable. Furthermore, because Rule 64.1 of the Workers' Compensation rules requires that PPD assessments be determined based upon the AMA *Guides* Fourth, the standards established in W. Va.C.S.R. § 85–20–64.5 must be compatible with impairment assessments that are calculated using the AMA *Guides* Fourth.

The parties to this appeal each seek to have this Court interpret W. Va.C.S.R. § 85–20–64.5 in a manner that is not expressly set out therein. We will discuss their interpretations of this rule in turn, beginning with Mr. Davies.

Mr. Davies urges this Court to adopt the interpretation used by the OOJ in resolving the proper application of W. Va.C.S.R. § 85–20–64.5. Under this interpretation, once a claimant's impairment level has been determined using the AMA *Guides* Fourth, as directed by W. Va.C.S.R. § 85–20–64.1, the impairment is then compared with the allowable PPD range of 0% to 6% set out in W. Va.C.S.R. § 85–20–64.5. Relying on the language of W. Va.C.S.R. § 85–20–64.1 that states "[p]ermanent partial disability assessments in excess of the range provided in the appropriate category as identified by the rating physician shall be reduced to the [sic] within the ranges set forth below," Mr. Davies contends that, if the claimant's level of impairment is anything greater than 6%, the maximum PPD award allowable under W. Va.C.S.R. § 85–20–64.5, then it must be reduced to 6%. However, if the claimant's level of impairment is 6% or below, then no adjustment is made. Under this interpretation, because Mr. Davies' impairment rating under the AMA *Guides* Fourth was 6%, no reduction would be necessary.

While, on the surface, this analysis may seem reasonable, it is necessary to examine more deeply how this process would apply in other carpal tunnel syndrome cases to ascertain its true reasonableness. When scrutinized more thoroughly in this way, it becomes apparent that Mr. Davies' suggested application of W. Va.C.S.R. § 85–20–64.5 is unjust when applied with Table 16 of the AMA *Guides* Fourth.[7] Indeed, the OOJ explained that Table 16 "yields whole-person impairment ratings of 0%, 6%, 12%, and 24%[.]" Thus, under Mr. Davies' interpretation of W. Va.C.S.R. § 85–20–64.5, *everyone* with an impairment caused by carpal tunnel syndrome would receive a 6% PPD award regardless of the severity of their impairment.

■ For example, a claimant with the lowest level of impairment under Table 16, *i.e.* 6%, would not have his or her award reduced

7. See note 2 *supra* for a discussion of Table 16. As noted therein, we limit our decision in this case to carpal tunnel evaluations using Table 16 of the AMA *Guides* Fourth.

and would be granted a 6% PPD award. However, a claimant with the highest level of carpal tunnel syndrome impairment, *i.e.* 24%, would have his or her award reduced to 6%. Thus, no person suffering from a compensable degree of carpal tunnel syndrome, regardless of how mild or severe, would be entitled to any PPD award other than 6%. Such a result is absurd, unjust, and unreasonable. Therefore, adopting Mr. Davies' proposed interpretation of W. Va.C.S.R. § 85–20–64.5 would violate this Court's "duty to avoid whenever possible [an application] of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *Peters v. Rivers Edge Min., Inc.*, 224 W.Va. 160, 176, 680 S.E.2d 791, 807 (2009) (internal quotations and citation omitted). *See also* Syl. pt. 3, *State v. Kerns*, 183 W.Va. 130, 394 S.E.2d 532 (1990) (" 'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938)."). This Court simply is not willing to construe the regulation in the manner suggested by the claimant due to the unjust, absurd, and unreasonable results that would occur. *See* Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n*, 166 W.Va. 117, 273 S.E.2d 72 (1980) ("Procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are *reasonable* and do not enlarge, amend or repeal substantive rights created by statute." (Emphasis added)).

Having rejected Mr. Davies' interpretation of the rule in question, we now look to the application thereof proposed by Alcon. Alcon suggests that Dr. Bachwitt was correct in creating different classifications of impairment within the range set forth in W. Va. C.S.R. § 85–20–64.5, to be labeled mild, moderate, or severe, so that the impairment ratings obtained from Table 16 could be distributed among them. Under this theory, a 6% impairment under Table 16 would be classified as mild, and the claimant would be entitled to a 1% or 2% PPD award under W.

Va.C.S.R. § 85–20–64.5. Likewise, a 12% impairment under Table 16 would be classified as moderate and the claimant would be entitled to a 3% or 4% PPD award, while a 24% impairment under Table 16 would be classified as severe, and the claimant would be entitled to a 5% or 6% PPD award.

As Mr. Davies and the OOJ have observed, no attempt has been made to explain how to determine which PPD award under a given classification is appropriate for claimants falling within that classification. For example, all claimants with a 6% impairment under Table 16 would be classified as mild and, thus, would be entitled to either a 1% or 2% PPD award. Since all these claimants would have the same impairment rating, it is not clear how the determination would be made as to which claimants would receive a 1% PPD award and which claimants would receive a 2% PPD award.

■ Nevertheless, there is an even more fundamental problem with Alcon's interpretation of W. Va.C.S.R. § 85–20–64.5. There simply is no language in the rule itself to support this interpretation. This Court has long recognized that "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). *Accord* Syl. pt. 2, *Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997). *Cf. Banker v. Banker*, 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) ("It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."). In the absence of supporting language, this Court is not at liberty to re-write the rule to achieve the result advocated by Alcon.

■ Based upon the foregoing analysis of the different theories for interpreting W. Va. C.S.R. § 85–20–64.5 in the context of assess-

ing carpal tunnel syndrome impairment using Table 16 of the AMA *Guides* Fourth, we conclude that W. Va.C.S.R. § 85–20–64.5 is in conflict with Table 16 of the AMA *Guides* Fourth.[8] Due to this conflict, we now expressly hold that W. Va.C.S.R. § 85–20–64.5 (2004) is invalid and cannot be applied to carpal tunnel syndrome impairment ratings assessed under Table 16 of the American Medical Association's, *Guides to the Evaluation of Permanent Impairment,* at 57 (4th ed.1993).

Because W. Va.C.S.R. § 85–20–64.5 cannot be applied to Mr. Davies' PPD claim insofar as his impairment evaluation was conducted using Table 16, and because the only evidence of Mr. Davies' level of impairment is the 6% whole-person impairment found by Dr. Bachwitt prior to the doctor's attempt to apply W. Va.C.S.R. § 85–20–64.5, we reverse the order of the Workers' Compensation Appeal Board granting Mr. Davies a 2% PPD award, and reinstate the order of the OOJ granting Mr. Davies an award of 6% PPD for his carpal tunnel syndrome.

## IV.

### CONCLUSION

For the reasons stated in the body of this opinion, the September 2, 2009, order of the Board of Review is reversed, and the January 29, 2009, order of the OOJ is reinstated.

Reversed.

Justice DAVIS delivered the Opinion of the Court.

---

**8.** W. Va.C.S.R. § 85–20–64.1 and W. Va.C.S.R. § 85–20–3.8 require disability assessments to be calculated using the AMA *Guides* Fourth. *See supra* note 1.