**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**LEWIS LAWHORN,**
**Claimant Below, Petitioner**

**vs.)   No. 20-0398** (BOR Appeal No. 2054971)
                    (Claim No. 2018022848)

**DISTRICT VETERANS CONTRACTING, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Lewis Lawhorn, by Counsel John H. Shumate Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). District Veterans Contracting, Inc., by Counsel Steven K. Wellman, filed a timely response.

The issue on appeal is additional compensable conditions. The claims administrator denied the addition of L5-S1 lumbar spondylolisthesis and lumbar radiculopathy to the claim on March 8, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its December 10, 2019, Order. The Order was affirmed by the Board of Review on May 21, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Lawhorn, a supervisor, injured his lower back at work when he slipped and fell on ice on March 2, 2018. On July 30, 2018, Paul Bachwitt, M.D., performed an Independent Medical Evaluation in which he noted that Mr. Lawhorn slipped and fell on ice at work, landing on his buttocks. Lumbar x-rays performed on April 15, 2018, showed bilateral L5 pars defect with anterolisthesis, degenerative disc disease, and degenerative facet disease but no acute injury. An April 25, 2018, CT scan showed moderate to severe degenerative changes at multiple areas with moderate to severe spinal canal narrowing from L3-S1. There were also mild to moderate bilateral degenerative changes in both sacroiliac joints. A June 16, 2018, MRI showed no acute findings but did note degenerative changes, bilateral spondylosis, and Grade 1 spondylolisthesis of L5 on S1. Dr. Bachwitt opined that Mr. Lawhorn had not reached maximum medical improvement and should remain off of work. Dr. Bachwitt further opined that Mr. Lawhorn's symptoms are the result of both the March 2, 2018, injury and preexisting spondylolisthesis, which was previously asymptomatic.

In an August 16, 2018, treatment note, Andrew Thymius, D.O., stated that Mr. Lawhorn was seen for low back pain that began in March of 2018. Dr. Thymius reviewed Mr. Lawhorn's lumbar MRI and diagnosed low back pain, lumbosacral spondylosis, lumbosacral spondylolisthesis, and lumbar spondylosis without myelopathy or radiculopathy. Dr. Thymius stated that Mr. Lawhorn has instability at L5-S1 due to the pars defect. In an August 23, 2018, follow up, Dr. Thymius noted that Mr. Lawhorn reported that Robert Marsh, M.D., a spinal surgeon, diagnosed an L5 fracture and recommended surgery. Dr. Thymius diagnosed lumbosacral spondylosis, L5-S1 instability, and lumbosacral spondylolisthesis. He stated that because Mr. Lawhorn had instability due to spondylolysis and a pars defect, spinal fusion would be necessary. Dr. Thymius noted that he had spoken with Dr. Marsh and he agreed that a spinal fusion was necessary. In an addendum, Mercedes Ramas, M.D., stated that he reviewed flexion and extension x-rays taken on August 16, 2018, and reviewed the case with Dr. Thymius. Dr. Ramas opined that Mr. Lawhorn has bilateral pars defect at L5 with mild anterolisthesis. He diagnosed lumbar spondylosis and generalized arteriosclerotic vascular disease.

In a November 6, 2018, addendum to his July 30, 2018, report, Dr. Bachwitt diagnosed lumbar sprain/strain and opined that Mr. Lawhorn's current symptoms were the result of the compensable injury. However, Dr. Bachwitt also opined that the request for a spinal fusion was not related to the compensable injury. Dr. Bachwitt stated that Mr. Lawhorn does not require surgery. He found that Mr. Lawhorn had good strength; nearly normal straight leg raising; and no sensory, motor, or reflex abnormalities. He also found that Mr. Lawhorn lacked specific findings on examination that would indicate a need for surgery.

Dr. Marsh evaluated Mr. Lawhorn for surgery on December 5, 2018. He diagnosed unspecified back pain of unspecified chronicity, lumbar degenerative disc disease, lumbar spondylosis, and unspecified spondylolisthesis. Dr. Marsh recommended physical therapy and referral to Dr. Thymius for L5-S1 epidural steroid injections. Mr. Lawhorn returned to Dr. Marsh on February 6, 2019, after a physical therapy trial. The diagnoses remained the same, and Dr. Marsh recommended referral to Robert Crow, M.D., a neurosurgeon, for a second opinion. Dr. Marsh recommended a posterior lumbar fusion. Dr. Marsh completed a Diagnosis Update on February 6, 2019, in which he requested the addition of L5-S1 spondylolisthesis and lumbar radiculopathy to the claim.

In a February 27, 2019, treatment note, Dr. Crow stated that Mr. Lawhorn completed six weeks of physical therapy. Dr. Crow reviewed the MRI and flexion/extension x-rays and opined that surgery would not benefit Mr. Lawhorn. Dr. Crow opined that even though Mr. Lawhorn has spondylolisthesis, his symptoms are not consistent with neurogenic claudication. Dr. Crow stated that Mr. Lawhorn may benefit from transforaminal steroid injections of the L5 nerve root.

Dr. Bachwitt stated diagnosed lumbar sprain/strain superimposed on preexisting spondylolisthesis of L5-S1 in his March 4, 2019, report. Dr. Bachwitt stated that spondylolisthesis usually occurs between the ages of four and six. Dr. Bachwitt opined that Mr. Lawhorn's current symptoms were the result of both the preexisting condition and the compensable injury. He further opined that Mr. Lawhorn would not benefit from surgery and that he should undergo epidural steroid injections. The claims administrator denied the addition of L5-S1 lumbar spondylolisthesis and lumbar radiculopathy to the claim on March 8, 2019.

In an April 23, 2019, consultation note, Nashaat Rizk, M.D., diagnosed lumbar spondylosis without myelopathy or radiculopathy, unspecified spondylolisthesis, back pain of unspecified chronicity, degenerative disc disease, and back spasm. On May 2, 2019, Dr. Rizk noted that the majority of Mr. Lawhorn's pain originated in his back with the remainder in his legs. Dr. Rizk opined that Mr. Lawhorn's main problem is chronic lower back pain and recommended lumbar medial branch blocks. On May 10, 2019, Dr. Rizk performed right lumbar medial branch blocks on the right at L4-5 and L5-S1 for the diagnosis of lumbar intervertebral disc disorder.

On May 28, 2019, Richard Vaglienti, M.D., treated Mr. Lawhorn for chronic back pain, chronic radicular pain, and chronic pain following a March 2, 2018, work injury. Dr. Vaglienti diagnosed unspecified back pain of unspecified chronicity, chronic pain, and bilateral radicular pain. He recommended branch blocks, physical therapy, and Neurontin. Dr. Rizk administered a

lumbar epidural steroid injection for the diagnoses of degenerative disc disease, stenosis, and radicular pain on June 12, 2019.

Mr. Lawhorn testified in a hearing before the Office of Judges on July 9, 2019, that immediately after slipping and falling on March 2, 2018, he felt sharp pain in his lower back and bilateral legs, followed by numbness and tingling. His symptoms worsened in the following days. Mr. Lawhorn denied any back or leg injuries, problems, or treatment prior to March 2, 2018.

It is noted that a January 13, 2012, treatment note by Kimberly Nemati, M.D., indicates Mr. Lawhorn was in a motor vehicle accident on December 10, 2011. He sought treatment from Dr. Nemati because he had developed middle and lower back pain with numbness into his left leg. He was diagnosed with lower back pain, midback pain, and numbness.

In a September 4, 2019, Independent Medical Evaluation, Jennifer Lultschik, M.D., diagnosed lumbar sprain/strain resulting from the compensable injury. She opined that Mr. Lawhorn likely had minimal preexisting spondylolisthesis unrelated to the compensable injury. Dr. Lultschik disagreed with the diagnosis of lumbar radiculopathy because she found no objective findings in support. She opined that the compensable injury would have had a negligible effect on the preexisting spondylolisthesis and that Mr. Lawhorn's subjective complaints are not supported by objective evidence.

The Office of Judges affirmed the claims administrator's denial of the addition of L5-S1 lumbar spondylolisthesis and lumbar radiculopathy to the claim in its December 10, 2019, Order. It found that the evidence was insufficient to show that L5-S1 spondylolisthesis resulted from the compensable injury. Dr. Lultschik opined that the condition was preexisting. She explained that spondylolisthesis rarely results from trauma and instead usually develops in childhood or from degeneration later in life. Dr. Lultschik asserted that the mechanism of injury in this case was not sufficient to cause traumatic lumbar spondylolisthesis. The Office of Judges found Dr. Lultschik's opinion to be reliable. The Office of Judges also considered Dr. Bachwitt's opinion. Dr. Bachwitt diagnosed lumbar sprain/strain superimposed on preexisting L5-S1 spondylolisthesis. Like Dr. Lultschik, Dr. Bachwitt also noted that spondylolisthesis most often develops in early childhood. Dr. Bachwitt opined that Mr. Lawhorn's current symptoms are the result of both the preexisting spondylolisthesis and the compensable lumbar sprain. The Office of Judges noted that Dr. Marsh, who completed the Diagnosis Update, failed to provide persuasive evidence that spondylolisthesis was related to the compensable injury.

Regarding lumbar radiculopathy, the Office of Judges found that Dr. Marsh requested the addition of the condition to the claim in his February 6, 2019, Diagnosis Update. However, Dr. Marsh's treatment note of the same date does not include lumbar radiculopathy in the diagnoses. The Office of Judges further found that Dr. Thymius saw Mr. Lawhorn on August 16, 2018, and diagnosed lumbar and lumbosacral spondylosis without myelopathy or radiculopathy. Mr. Lawhorn was also treated by Dr. Rizk on April 23, 2019, and May 2, 2019, and Dr. Rizk diagnosed spondylosis without myelopathy or radiculopathy. Dr. Lultschik also found no evidence of radiculopathy in this case. She noted that the diagnosis was based on subjective complaints and that there were no objective indicates of radiculopathy. She also noted that mere complaints of

4

pain radiating into the leg, particularly when the pain does not extend below the knee, are not sufficient to establish a diagnosis of radiculopathy. The Office of Judges again found Dr. Lultschik's opinion persuasive. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 21, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, West Virginia Code of State Rules § 85-20-37.8 provides that comorbidities, such as spondylolisthesis, are not compensable conditions. A preponderance of the evidence indicates Mr. Lawhorn's L5-S1 spondylolisthesis preexisted the compensable injury. Dr. Lultschik asserted that the mechanism of injury in this case was not sufficient to cause traumatic lumbar spondylolisthesis, and her opinion is persuasive. Regarding lumbar radiculopathy, Mr. Lawhorn has no objective findings consistent with the diagnosis.

Affirmed.

**ISSUED: September 22, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton