**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**JOYCE LINKOUS,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0315** (BOR Appeal No. 2055861)
(Claim No. 2016015095)

**BLUESTONE HEALTH ASSOCIATION, INC.,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Joyce Linkous, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Bluestone Health Association, Inc., by Counsel Lisa Warner Hunter, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator granted a 0% permanent partial disability award on January 22, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its October 21, 2020, Order. The Order was affirmed by the Board of Review on March 18, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue

1

in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Linkous, a receptionist, injured her head and left thumb on December 7, 2015, when she slipped and fell on ice at work. Ms. Linkous had a long history of migraines and headaches prior to the compensable injury. From October 6, 2010, through December 7, 2015, Ms. Linkous was repeatedly treated at Princeton Community Hospital for migraines, headaches, nausea, neck pain, light sensitivity, eye pain, blurred vision, dizziness, light-headedness, and vertigo. An MRI was performed of Ms. Linkous's brain due to headaches, dizziness, and blurry vision on March 27, 2013. It showed a number of hyperintensities in the white matter due to microvascular ischemic changes. Treatment notes from William Merva, M.D., indicate Ms. Linkous was seen for migraines, hypothyroidism, hypertension, headache, sciatica, and lumbosacral radiculopathy from December 8, 2014, through March 28, 2015.

Immediately following her compensable injury, Ms. Linkous sought treatment from Princeton Community Hospital's Emergency Room. She reported that she slipped and fell on ice at work, hitting her head and jarring her neck. She also reported pain in her neck, left elbow, and thumb, as well as a headache. A CT scan of the head showed no acute abnormalities. An x-ray of the fingers showed arthritis but no acute injury. A cervical CT scan showed no abnormalities and mild degenerative changes at C5-6. Ms. Linkous was diagnosed with nondisplaced fracture of the distal phalanx of the left thumb and post-concussion syndrome.

The Employees' and Physicians' Report of Injury, completed on December 7, 2015, indicates Ms. Linkous slipped and fell on black ice at work that day. She injured her back, shoulders, head, neck, arm, and thumb. The physicians' section was completed by Amanda Neal, FNP, who noted injuries to the head, neck, back, left elbow, and left hand. It was noted that the injury aggravated Ms. Linkous's preexisting migraines. The claim was held compensable for nondisplaced fracture of the proximal phalanx of the left thumb and concussion without loss of consciousness on December 23, 2015.

A treatment note by Barry Vaught, M.D., a neurologist, indicates Ms. Linkous was seen on January 6, 2016, for headaches and dizziness following the compensable injury. Ms. Linkous reported that though she had migraines prior to the injury, the headaches she developed following the compensable injury were different. She also reported dizziness with her headaches. Dr. Vaught diagnosed occipital neuralgia and mild post-concussion syndrome. He recommended left occipital

2

nerve blocks and physical therapy. A.E. Landis, M.D., evaluated Ms. Linkous's left thumb injury on February 1, 2016. X-rays showed mild degenerative changes. Dr. Landis diagnosed left thumb contusion/sprain.

On August 8, 2016, Joseph Touma, M.D., evaluated Ms. Linkous for vertigo. He noted that she developed intermittent dizziness, headaches, and difficulty swallowing after her compensable injury. Ms. Linkous reported staggering to the left, light headedness, nausea, vision issues, and bilateral hearing loss. Dr. Touma assessed reduced vestibular response on the right and poor central testing. He recommended supplements and vestibular rehabilitation.

In a December 12, 2016, treatment note, J.K. Lilly, M.D., stated that Ms. Linkous was seen prior to the work injury for right-sided migraine headaches. Following her injury, she reported left side headaches and neck pain. Dr. Lilly diagnosed cervical facet degeneration, cervical spine pain, neuralgia, occipital neuralgia, and cervical facet syndrome. Dr. Lilly opined that the preexisting migraines were not affecting the left-sided headaches and neck pain. Dr. Lilly saw no lingering symptoms of post-concussion syndrome. Ms. Linkous was not at maximum medical improvement, and Dr. Lilly recommended a diagnostic block.

An August 14, 2018, treatment note from Princeton Community Hospital Emergency Room indicated Ms. Linkous sought treatment for a headache. She stated that her headaches began in 2015 following a work injury. She was diagnosed with chronic post traumatic headaches. Ms. Linkous was referred to Nicholas Bremer, M.D., for occipital headaches. On October 18, 2018, she reported constant pain following her work injury. Nerve blocks, medication, and radiofrequency ablation were unsuccessful. Dr. Bremer diagnosed neck strain, migraine, spasmodic torticollis, occipital neuralgia, and chronic pain syndrome.

In a January 16, 2019, Independent Medical Evaluation, Joseph Grady, M.D., noted that Ms. Linkous had migraines prior to the compensable injury. Following the injury, her headaches were very different. Dr. Grady diagnosed posttraumatic occipital headaches superimposed on a history of migraines. Dr. Grady found that Ms. Linkous had reached maximum medical improvement. Dr. Grady found that the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) do not provide a ratable criterion for impairment due to headaches. He therefore assessed 0% impairment. The claims administrator granted a 0% permanent partial disability award on January 22, 2019.

Robert Walker, M.D., performed an Independent Medical Evaluation on August 15, 2019, in which he assessed 20% impairment under Section 9.1c of the AMA *Guides* for vestibular dysfunction. He assessed 3% for impairment of the central nervous system and 1% for range of motion loss in the left thumb. His total impairment rating was 25% impairment. On November 13, 2019, Michael Kominsky, D.C., performed an Independent Medical Evaluation in which he assessed 2% impairment for the left thumb injury. He also assessed 15% for vestibular dysfunction for a combined total of 17% whole person impairment.

In a February 20, 2020, Independent Medical Evaluation, Marsha Bailey, M.D., assessed 1% impairment for left thumb range of motion loss but apportioned the impairment due to range

3

of motion loss in the uninjured right thumb. Dr. Bailey found no impairment for Ms. Linkous's head injury. She noted that Ms. Linkous suffered from headaches for forty years prior to the compensable injury. The headaches progressed and Ms. Linkous was sent to a neurologist a year prior to the compensable injury. Regarding the other evaluations of record, Dr. Bailey agreed with Dr. Grady's impairment findings but opined that Drs. Walker and Kominsky misapplied the AMA *Guides*. She stated that Section 9.1c was intended for claimants who have equilibrium issues due to inner ear disease and vestibular mechanism. Ms. Linkous suffered no injury to her ears and therefore, that section of the AMA *Guides* is not appropriate to assess Ms. Linkous's impairment. Dr. Bailey further found that Dr. Walker erred in assessing impairment for the central nervous system. Ms. Linkous underwent an MRI of the brain in 2013 due to headaches, dizziness, and blurry vision and it revealed microvascular ischemic changes due to longstanding cerebral vascular disease due to hypertension, hyperlipidemia, and diabetes.

The Office of Judges affirmed the claims administrator's grant of a 0% permanent partial disability award in its October 21, 2020, Order. It found that Drs. Grady and Bailey found no impairment due to the compensable injury while Dr. Walker found 25% impairment and Dr. Kominsky found 17%. The Office of Judges concluded that Drs. Walker and Kominsky failed to provide an accurate assessment of Ms. Linkous's impairment. Both recommended impairment for vestibular dysfunction under Section 9.1c of the AMA *Guides*, but Dr. Bailey explained that that section is for disequilibrium due to an ear injury and did not apply in this case. The Office of Judges concluded after reviewing the section that Dr. Bailey was correct. Additionally, Ms. Linkous had a long and significant history of migraines and dizziness prior to the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 18, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The most reliable evaluations of record are those performed by Dr. Bailey and Dr. Grady. Drs. Walker and Kominsky incorrectly applied the AMA *Guides*. Section 9.1c states that "[p]ermanent impairment can result from defects of the vestibular (labyrinthine) mechanism and its central connections. The defects are evidenced by loss of equilibrium produced by (1) loss of vestibular function or (2) disturbances of vestibular functions." Ms. Linkous sustained no injury to her ear, inner or outer. Therefore, Section 9.1c is not appropriate for assessing impairment in this case. Ms. Linkous was correctly awarded 0% permanent partial disability.

Affirmed.

**ISSUED: September 19, 2022**

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn