## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**PPG INDUSTRIES, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 21-0231** (BOR Appeal No. 2055711)
(Claim No. 2019002683)

**DOUGLAS L. STEELE,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner PPG Industries, Inc. ("PPG"), by Counsel James W. Heslep, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Douglas L. Steele, by Counsel R. Dean Hartley, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on December 11, 2018. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its September 11, 2020, Order and held the claim compensable for chronic lymphocytic leukemia ("CLL"). The Order was affirmed by the Board of Review on February 19, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Steele, a chemical factory worker, alleges that he developed CLL as a result of occupational exposure to benzene. On February 24, 2018, Stephen Petty completed a summary of his phone interview with Mr. Steele. Mr. Steele stated that he was diagnosed with CLL in April of 2016. He stated that he smoked cigarettes from 1969 to 1990. Mr. Petty asked Mr. Steele about his work history. Mr. Steele worked for PPG Industries in the utility department from June 28, 1968, until the summer of 1978. Mr. Steele stated that during that time he was exposed to benzene, 104 solvent, carbon tetrachloride, mineral spirits, aluminum cleaner, perchloroethylene, Safety-Kleen, hydrogen-sulfate, asbestos, caustic, barium, chlorine, ammonia, and liquid wrench. He wore gloves and carried an emergency respirator. In the summer of 1978, Mr. Steele was moved to the chlorine department, where he worked until 2003. He stated that during that time, he was exposed to benzene, mineral spirits, Safety-Kleen, asbestos, chlorine, and liquid wrench. He wore gloves and had an emergency respirator. He also had full and half-face respirators available for use. Mr. Steele stated that from 2003 until his retirement in 2006, he worked as a cut-out man during which he was exposed to benzene, mineral spirits, Safety-Kleen, asbestos, and chlorine. Mr. Steele stated that during his employment for PPG industries, he could smell benzene while he was working. Benzene splashed on his skin when he cleaned out ditches and would stay on his skin until it evaporated, or he went on break and could wash his skin. Mr. Steele used mineral spirits to clean brushes from 1968 to 1978. From 1968 to 2003, Mr. Steele used Safety-Kleen to clean parts, and the chemical would soak through his gloves. Mr. Steele stated that he had never heard of a Material Safety Data Sheet ("MSDS") and had never received training on MSDS.

Amit Mehta, M.D., reviewed records and performed an examination of Mr. Steele. In his June 1, 2018, report, he noted that Mr. Steele was diagnosed with CLL two years prior. Dr. Mehta found that Mr. Steele was exposed to several chemicals, including benzene, during his employment at PPG. Mr. Steele reported that the chemicals would sometimes spill onto his clothes and that he only occasionally wore a mask and gloves. Mr. Steele was also exposed to benzene fumes while working in the chlorine department. Dr. Mehta found that Mr. Steele had no family history of hematologic malignancy or other cancers. Considering Mr. Steele's significant exposure to

benzene for thirty-five years, Dr. Mehta opined that it was more likely than not that Mr. Steele's CLL was the result of his occupational benzene exposure.

The Employees' and Physicians' Report of Injury or Disease, completed on June 1, 2018, indicates Mr. Steele contracted an occupational disease in the course of and resulting from his employment. Mr. Steele stated that he had more than thirty-five years of exposure to chemicals, including benzene. Dr. Mehta completed the physician's section and opined that Mr. Steele developed chronic lymphocytic leukemia as a result of his occupational exposure.

Mr. Steele testified in an August 28, 2018, deposition that he worked for PPG from 1968 until he retired in 2006. Mr. Steele stated that he was consistently exposed to benzene throughout the course of his employment. While working in the utility department, he could smell benzene on a daily basis in the plant. He sometimes had to shovel out ditches containing benzene and the liquid would splash on his pants. While he was working in the chlorine department, Mr. Steele could smell benzene daily. Mr. Steele testified that he was also exposed to Safety-Kleen, which was used to clean various parts. Mr. Steele used it while working in both the utility and chlorine departments. Though he used gloves, Mr. Steele stated that the Safety-Kleen would get inside of his gloves and sometimes on his clothes.

In a September 14, 2018, verified statement, Stephen Petty explained that he is a Professional Engineer, a Certified Industrial Hygienist, and a registered Certified Safety Professional and was currently the president of a EES Group, Inc., a registered engineering corporation. Mr. Petty stated that he has a Master of Science in Chemical Engineering and almost forty years of experience in forensic engineering, environmental health and safety, and energy. He has testified as an expert witness in three hundred cases of chemical exposures and OSHA compliance. Mr. Petty stated that he reviewed materials about PPG's facilities as part of a deliberate intent case for another worker who worked at the same plant at the same time as Mr. Steele. Mr. Petty interviewed Mr. Steele and opined that PPG violated many rules, regulations, and industry standards, creating an unsafe working environment which directly led to Mr. Steele's occupational illness. Mr. Petty opined that Mr. Steele's chemical exposure would have been intense, frequent, and close to his body.

In a September 17, 2018, certification statement, Dr. Mehta stated that he has published over twenty articles in peer reviewed medical journals in the areas of oncology and hematology. He opined that multiple studies have shown that a higher levels of exposure to benzene result in a higher risk of developing CLL. Dr. Mehta stated that he is certified in oncology, hematology, and internal medicine. Dr. Mehta previously practiced at Duke Cancer Institute and currently practices at Premier Hematology & Tele-Oncology Center.

In an Independent Medical Evaluation, Christopher Martin, M.D., performed an Independent Medical Evaluation on November 1, 2018, in which he noted that Mr. Steele reported frequent benzene exposure during the course of his employment at PPG. Mr. Steele stated that the chemical was everywhere and that he could frequently smell it in the air. There were three large benzene tanks at the plant, and the wind frequently blew fumes into the plant. Mr. Steele reported that he also used liquid wrench, which contains 30% benzene. Dr. Martin stated that Mr. Steele's

affidavit indicates at least two other workers from the same plant also developed leukemia. Dr. Martin opined that the evidence did not support a finding that Mr. Steele's CLL was the result of his occupational exposure. Dr. Martin stated that the National Cancer Institute and American Cancer Society state that most people are diagnosed with CLL between the ages of sixty-four and seventy-four. CLL is most common among white males. Dr. Martin opined that Mr. Steele fits the typical profile for a diagnosis of CLL among the general population. He further opined that benzene is not listed as a risk factor for CLL, and it therefore benzene exposure cannot be accepted as a risk factor for CLL. Dr. Martin reviewed Dr. Mehta's findings and conclusions. Dr. Martin opined that Mr. Steele's lack of family history and other risk factors for CLL do not make an occupational cause more likely, as found by Dr. Mehta because only a small percentage of people with CLL have a family history of the disease. Dr. Martin acknowledged that the International Agency for Research on Cancer ("IARC") found a possible association between benzene exposure and CLL, but it determined that the evidence for the association was limited. Dr. Martin concluded that the IARC did not believe the association rose to the level of causality. Dr. Martin concluded that Mr. Steele failed to show to a reasonable degree of medical certainty that his CLL was causally related to his occupational chemical exposure.

The claims administrator rejected the claim on December 11, 2018. It stated that records were sent to Dr. Martin who opined that there was insufficient evidence to establish a causal connection between Mr. Steele's medical condition and his employment.

The employer submitted a November of 1980 health hazard report by the National Institute for Occupational Safety and Health ("NIOSH") indicating a request for evaluation was received from a local union for PPG. The hazard was benzene, para-dichlorobenzene, and polychlorinated biphenyls. Samples were taken and it was ultimately determined that there was no hazard from exposure to the chemicals.

A 1982 IRAC Monograph on the Evaluation of the Carcinogenic Risk of Chemicals to Humans was also submitted and indicates that there is a clear correlation between exposure to benzene and the development of hematological conditions. The report stated that the relationship between benzene exposure and the development of acute myelogenous leukemia has been established by epidemiological studies. Causality between benzene exposure and other malignancies was not established but it was ultimately concluded that benzene is carcinogenic to humans.

An IARC Monograph update on Benzene was released in December of 2018. The report states that benzene exposure occurs through inhalation or dermal absorption. It notes that several studies had been performed both in the United States and abroad to determine if a causal connection exists between benzene exposure and CLL with mixed results.

Dr. Martin testified in a July 16, 2019, deposition that the primary issue in this case is the causal relationship between benzene exposure and CLL. Dr. Martin asserted that medical literature regarding benzene exposure and CLL is mixed. Dr. Martin acknowledged that the American Cancer Society's website references studies that suggest a link between CLL and benzene exposure. Also, the EPA has determined that benzene causes CLL, though Dr. Martin disagreed

4

with those findings. Dr. Martin took issue with a study that Dr. Mehta relied on to find that Mr. Steele's benzene exposure caused CLL. Dr. Martin testified that while it was possible Mr. Steele's benzene exposure caused him to develop CLL, it was not medically probable. Dr. Martin acknowledged that Mr. Steele's occupational exposure was the only factor that has been positively correlated with CLL. Dr. Martin opined that Mr. Steele's demographics, particularly his age, were the biggest risk factors for CLL.

In a November 20, 2019, report, Peter Infante, D.D.S., stated that he has held multiple positions as professor, director, and consultative for occupational health, carcinogen identification, and epidemiology. Dr. Infante worked for the IARC and was invited to meetings held in 2009 and 2017. The purpose of the meetings was to evaluate chemical and workplace exposure, including benzene. Dr. Infante conducted epidemiological studies of workers exposed to chemicals, including benzene. Dr. Infante stated that he has conducted major research on benzene toxicity to humans and received a Special Commendation from the United States Public Health Services, Centers for Disease Control, and NIOSH. Dr. Infante opined that occupational exposure to benzene can cause CLL. In support, he cited thirty-five pages of case reports, epidemiological studies, meta-analyses, mortality studies, governmental agency reports, industry studies, and a biological plausibility assessment.

Dr. Mehta testified in a deposition on December 4, 2019, that he is a hematologist and oncologist and is board certified in both specialties. Dr. Mehta stated that he examined Mr. Steele and reviewed his records. He concluded that Mr. Steele's occupational exposure to benzene resulted in his CLL. Dr. Mehta asserted that there is a large amount of medical literature establishing a link between benzene exposure and CLL. He further asserted that it is the conclusion of most hematologists that benzene causes CLL. Dr. Mehta opined that Mr. Steele's significant benzene exposure was sufficient to cause CLL. He testified that Mr. Steele had no other risk factors for the disease, including a family history. Further, Mr. Steele had a deleted 13q chromosome, which is consistent with benzene-induced leukemia. Dr. Mehta stated that Dr. Infante has done extensive research on the link between benzene exposure and CLL, and his research is seen in the hematology community as essentially indisputable scientific evidence for the link between benzene exposure and CLL. Dr. Mehta testified that he reviewed Dr. Martin's report and found it implausible that Dr. Martin would not consider Mr. Steele's multiple decades of benzene exposure as clinically significant. Dr. Mehta stated that Dr. Martin's specialty is in occupational medicine, not oncology or hematology.

The Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable for CLL in its September 11, 2020, Order. First, the Office of Judges found that there is no question that Mr. Steele suffers from CLL. Second, the Office of Judges concluded that Mr. Steele had significant occupational exposure to benzene. He reported that he was exposed to benzene and benzene containing products for his thirty-five years of employment at PPG. He testified extensively of exposure to benzene while working in the form of liquid splashing on his clothes and gloves and breathing in fumes. The Office of Judges concluded that Mr. Steele submitted sufficient evidence to establish that he was exposed to benzene in the course of his employment at PPG. PPG relied on the July 11, 1980, NIOSH sampling to assert that no benzene hazard was found at the plant. However, the Office of Judges concluded that such report only

establishes that benzene was not present in hazardous amounts on that particular day and time. The Office of Judges concluded that the report was not sufficient to rebut the other reports of record indicating Mr. Steele was exposed to benzene.

Third, the Office of Judges determined that the weight of the medical evidence establishes that benzene exposure can cause CLL. It found that Drs. Mehta and Infante both opined that numerous studies have shown a causal connection between benzene exposure and CLL. Dr. Infante is a professional epidemiologist with an extensive resume. In support of his position, Dr. Infante submitted over thirty pages of case reports, epidemiological studies, meta-analyses, mortality studies, governmental agency reports, industry studies, and a biological plausibility assessment. The Office of Judges noted that Dr. Mehta is a hematologist and oncologist who primarily works with hematologic malignancies, such as leukemia and lymphoma. Dr. Mehta opined that Mr. Steele's benzene exposure caused him to develop CLL. He asserted that Mr. Steele's occupational exposure was a substantial risk factor for CLL, and most hematologists are of the opinion that benzene causes CLL. PPG argued that benzene does not cause CLL and relied on the report of Dr. Martin. The Office of Judges noted that Dr. Martin is an occupational medicine physician who opined that the evidence does not support a finding that benzene exposure caused Mr. Steele to develop CLL. In support of his position, Dr. Martin cited articles from the National Cancer Institute and the American Cancer Society and stated that Mr. Steele fit the typical age, gender, and ethnicity of someone diagnosed with CLL in the general population.

The Office of Judges determined that there is no consensus in the medical community regarding a causal link between benzene exposure and CLL. On one side, Drs. Infante and Mehta assert that benzene exposure causes CLL and on the other, Dr. Martin argues the opposite. Both sides cited numerous medical reports, studies, and literature in support. The Office of Judges noted that both Drs. Martin and Infante stated that opinions on causality in this context are professional judgment calls. The Office of Judges agreed. It found that Dr. Infante is an award winning professional epidemiologist with a focus on occupational environmental epidemiology. He has written numerous articles on benzene exposure and its risks and has served as an expert witness in hundreds of cases. Dr. Mehta is a hematology and oncology physician who specializes in hematologic malignancies, such as leukemia and lymphoma. On the other side, Dr. Martin is an occupational medicine physician. The Office of Judges concluded that Drs. Infante and Mehta were more qualified in the area of benzene exposure and CLL causality than Dr. Martin. Further, the opinions of Drs. Infante and Mehta support each other, whereas there is no medical opinion of record in support of Dr. Martin's findings. The Office of Judges therefore determined that the opinions of Drs. Infante and Mehta were the most persuasive of record. The Office of Judges noted that West Virginia Code § 23-4-1 provides the standard for compensability of occupational diseases. It requires

> "(1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment;

6

(5) that it is incidental to the character of the business and not independent of the relation of an employer and employee; and (6) that it appears to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction."

The Office of Judges concluded that Mr. Steele established a prima facia case for CLL due to occupational benzene exposure by showing that (1) a causal connection exists between the conditions under which his work was performed and his diagnosis of CLL, (2) that his CLL was a natural incident of his work as a result of exposure to benzene, (3) that the cause of his CLL can be traced to his employment, (4) that his CLL did not develop as the result of a non-occupational hazard, (5) that the exposure which resulted in CLL was incidental to the character of the employer's business, and (6) that his development of CLL originated in a risk connected to his employment and flowed as a result of that employment. The Office of Judges held the claim compensable for CLL. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 19, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Steele submitted sufficient evidence to find his claim compensable under West Virginia Code § 23-4-1. Mr. Steele presented sufficient evidence that he had significant exposure to benzene throughout his thirty-five years of employment for PPG and that such exposure resulted in the development of CLL.

Affirmed.

**ISSUED: February 10, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn