## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**JOHNNY MCKINNEY,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0391** (BOR Appeal No. 2054821)
                        (Claim No. 2018010643)

**KINGSTON MINING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner, Johnny McKinney, by Counsel Reginald Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Kingston Mining, Inc., by Counsel Sean Harter, filed a timely response.

The issue on appeal is the amount of residual permanent partial disability in the claim as a result of Mr. McKinney's compensable injury. The claims administrator granted a 0% permanent partial disability award on August 24, 2018. In an Order dated November 6, 2019, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's grant of a 0% award. This appeal arises from a Board of Review Order dated May 21, 2020, in which the Board of Review affirmed the Office of Judges' Order.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions . . . .

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. McKinney, a mine foreman, sustained an injury to his right knee on November 1, 2017, as he was walking across a railway to go underground in a mantrip with the rest of his crew. Mr. McKinney testified that as he was walking to the mantrip, he noticed that the curtain that they needed for the job was on the ground. He placed the approximately thirty to fifty pound rubber curtain on his shoulder and was stepping across the track when his right knee buckled and became dislocated. Mr. McKinney stated that his foot slipped on uneven ground. He was transported by Jan Care Dispatch from his worksite to Raleigh General Hospital. X-rays taken of his right knee revealed loss of joint space in the medial compartment, ossified posterior patella, and enthesophyte superior patella, but no joint effusion or fracture was found. Hospital personnel diagnosed knee sprain and completed the Employees' and Physicians' Report of Occupational Injury Form.

Paul M. Oar, M.D., Mr. McKinney's primary care physician, examined him on November 2, 2017, and noted that he was suffering from right-knee pain. Dr. Oar's examination revealed some global swelling of the right knee and tenderness along the medial and lateral joint lines. Dr. Oar referred Mr. McKinney to S. Brett Whitfield, M.D., an orthopedic surgeon. During his visit to Dr. Whitfield on November 9, 2017, the examination revealed mild effusion, full extension to 120 degrees of flexion, and medial and lateral joint tenderness. Regarding the X-rays taken on November 1, 2017, Dr. Whitfield noted the following abnormalities: arthritic changes of the patellofemoral joint with osteophytes about the superior and inferior pole of the patella; enthesophyte about the dorsal surface superiorly at the patella; and degenerative changes of the lateral and medial compartment with small osteophytes. Dr. Whitfield diagnosed internal derangement of the right knee with suspected medial and lateral meniscal tears and preexisting arthritic changes of the right knee, with exacerbation. Dr. Whitfield recommended an MRI to determine whether Mr. McKinney had sustained a torn meniscus.

By Order dated November 21, 2017, HealthSmart Casualty Claims Solutions ("the claims administrator") rejected Mr. McKinney's application for workers' compensation benefits. The claims administrator stated that the injury occurred at work, but there was no medical evidence to support that the injury was a result of his work. Mr. McKinney protested the claims administrator's decision and elected the expedited adjudication process.

2

An MRI of the right knee was performed on December 5, 2017, which revealed complete posterior root tear of the medial meniscus and body segments of the medial meniscus with mild patellar tendinosis and moderate cartilage abnormalities. On December 21, 2017, Dr. Whitfield reexamined Mr. McKinney and discussed the MRI study. Dr. Whitfield stated, "MRI demonstrates a complex tear of the posterior horn of the medial meniscus extending into the body." Surgery was recommended. On January 10, 2018, Dr. Whitfield performed surgical arthroscopy of the right knee with debridement and removal of intra-articular loose bodies. Because the claim was rejected by the claims administrator, the surgical procedure was performed under Mr. McKinney's private health insurance. Mr. McKinney returned to Dr. Whitfield on January 25, 2018. In his medical records, Dr. Whitfield noted that Mr. McKinney did have a tear of the medial meniscus.

The claims administrator referred Mr. McKinney to Prasadarao Mukkamala, M.D., who prepared a report on February 1, 2018, wherein he opined that Mr. McKinney's right-knee impairment was not related to the work incident of November 1, 2017. Dr. Mukkamala diagnosed him with internal derangement of the right knee, status post arthroscopic surgery, and osteoarthritis. Dr. Mukkamala stated that the conditions that he diagnosed for the right-knee are not causally related to Mr. McKinney's employment. Dr. Mukkamala considered Mr. McKinney to be morbidly obese and attributed his right-knee condition, including internal derangement and osteoarthritis, to his age and excessive weight. Dr. Mukkamala indicated that because he was simply walking when his knee gave out, there was no isolated fortuitous event that could be construed as an injury. It was Dr. Mukkamala's professional opinion that the internal derangement was naturally occurring.

On April 5, 2018, the Office of Judges reversed the claims administrator's Order of November 21, 2017, and ruled the claim compensable for right-knee sprain. Although Mr. McKinney was found to have significant preexisting degenerative changes in his right knee prior to the injury, the Office of Judges found that he established that it was more likely than not that he sustained a compensable injury while working on November 1, 2017. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the April 5, 2018, decision.[1]

By a claims administrator Order dated July 9, 2018, Dr. Whitfield's request that a medial meniscus tear of the right knee and osteoarthritis of the right knee be added as additional compensable conditions in this claim was denied. The claims administrator alleged that these conditions were unrelated to the compensable injury of November 1, 2017. Mr. McKinney protested the claims administrator's decision.

Mr. McKinney was evaluated by Marsha Bailey, M.D., on August 13, 2018. In her report, Dr. Bailey described the compensable injury and the subsequent medical treatment. It was noted that Mr. McKinney continued to have right knee pain with increased pain from weight-bearing and

---

[1] This Court affirmed the Board of Review's Order dated August 17, 2018, in *Kingston Mining, Inc. v. McKinney*, No. 18-0788 (W. Va. Supreme Court, February 13, 2020) (memorandum decision).

climbing stairs. Dr. Bailey wrote that Mr. McKinney's knee was showing signs of weakness and he had a very slight amount of brawny edema. She diagnosed chronic right knee pain that she believed was due to non-compensable preexisting degenerative joint disease and osteoarthritis of the right knee, which had been accelerated by his longstanding obesity. Although it was reasonable to assume that he sustained a right knee sprain/strain on November 1, 2017, Dr. Bailey opined that the simple right knee sprain/strain has long since resolved and is not responsible for Mr. McKinney's current complaints. Dr. Bailey concluded that he had no right knee impairment from the compensable injury pursuant to the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993).

Mr. McKinney saw Bruce Guberman, M.D., on November 9, 2018, for a medical evaluation. A physical examination revealed that he was walking with an antalgic but steady gait. The right knee showed moderate tenderness, moderate crepitation, and mild swelling. Dr. Guberman diagnosed a history of a right knee sprain occurring on November 1, 2017, and stated that the compensable injury aggravated preexisting dormant degenerative disease of the right knee with medial and lateral meniscus tears. Dr. Guberman also noted that Mr. McKinney underwent a partial medial and lateral meniscectomy and chondroplasty of the right knee on January 10, 2018. Dr. Guberman found that he had reached his maximum degree of medical improvement with 4% whole person impairment of the right knee for the partial medial and lateral meniscectomy based upon the AMA, *Guides*. Dr. Guberman did not apportion any of the impairment since he believed that the surgery to perform the partial medial lateral meniscectomy was necessary only as a result of the injury of November 1, 2017. Dr. Guberman stated to a reasonable degree of medical certainty that Mr. McKinney would not have required the surgery for his right knee, if it were not for the injury of November 1, 2017, despite the degenerative changes that were present on the imaging study.

Ronald Fadel, M.D., an orthopedist, reviewed Mr. McKinney's medical records and issued a report on May 20, 2019. Dr. Fadel wrote that Dr. Whitfield's November 30, 2018, letter, described degenerative meniscal tears and extensive preexisting age related degenerative articular cartilaginous disease. Dr. Fadel was skeptical that he had no symptoms to his right knee prior to the compensable injury. He concluded that any consideration of ongoing treatment for degenerative joint disease, is clearly directed towards preexisting pathology in this case.

Mr. McKinney saw Dr. Mukkamala on July 24, 2019, for another medical evaluation. Dr. Mukkamala wrote that the claim is compensable for a right knee sprain. Upon examination, it was found that the right knee had reduced range of motion. There was right knee flexion contracture but no atrophy. Dr. Mukkamala believed that Mr. McKinney was at maximum medical improvement, with a 4% whole person impairment pursuant to Table 64 of the AMA *Guides*, for the partial medial and partial lateral meniscectomy. However, Dr. Mukkamala apportioned the entirety of the 4% impairment recommendation for preexisting degenerative arthrosis of the right knee. Dr. Mukkamala disagreed with Dr. Guberman's recommendation of 4% whole person impairment and emphasized that Mr. McKinney had preexisting degenerative joint disease at the right knee, with "no objective credible medical evidence that the preexisting degenerative disease was aggravated."

4

On November 6, 2019, the Office of Judges found that a preponderance of the evidence indicates that Mr. McKinney's compensable injury caused no right knee impairment and affirmed the claims administrator's Order dated August 24, 2018. Although both Drs. Guberman and Mukkamala found 4% right knee impairment pursuant to Table 64 of the AMA *Guides*, the Office of Judges noted that Dr. Guberman did not allocate for Mr. McKinney's right knee meniscectomy. It was determined that Dr. Mukkamala's medical evaluation of July 24, 2019, is the best indicator of his whole person impairment from the compensable injury. He appropriately allocated the entirety of the 4% because Mr. McKinney's torn meniscus was degenerative and not caused by the compensable injury. The Board of Review issued an Order dated May 21, 2020, adopting the findings of fact and conclusions of law of the Office of Judges and affirmed the decision.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The evidence of record indicates that 4% impairment results from Mr. McKinney's non-compensable conditions, and 0% impairment results from the compensable right-knee sprain of November 1, 2017. The Board of Review's Order is affirmed.

Affirmed.

**ISSUED: September 27, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING:**

Justice John A. Hutchison
Justice William R. Wooton

Wooton, Justice, dissenting, and joined by Justice Hutchison:

I once again dissent to the majority's underlying conclusion that the meniscal tear present in petitioner's right knee did not occur in the course of and resulting from his employment. Consistent with my stated dissent in *McKinney v. Kingston Mining, Inc*., No. 20-0137, 2021 WL 2022136 (W. Va., May 20, 2021), the Board of Review's ("Board") determination herein is based upon its adoption of the Office of Judges' ("OOJ") prior erroneous conclusion that petitioner's meniscal tear was pre-existing in nature and therefore ineligible for a finding of compensability and resultant permanent partial disability. However, the preponderance of evidence demonstrates quite plainly that petitioner sustained an isolated, fortuitous injury which caused a meniscal tear requiring surgery and resulting in a permanent impairment. Based on the OOJ and Board's contrary mischaracterization of the evidence, I dissent.

The source of the OOJ and Board's mischaracterization of the etiology of petitioner's meniscal tear is the repeated reliance on both Dr. Mukkamala's error about the mechanism of injury and a single, isolated reference in an operative report which was later clarified by the physician. Specifically, Dr. Mukkamala—whose causation and permanent partial disability apportionment opinions the Office of Judges credited *to the exclusion of all others*[2]—was under the impression that petitioner sustained no particular injury on the date of loss. Dr. Mukkamala stated in his initial report that petitioner's symptoms were not the result of "occupational activities. He was simply walking which is a normal activity and the claimant did not twist his knee, he did not take a fall and nothing fell on him[.]" Concluding that his understanding of the event "d[id] not indicate an injury," Dr. Mukkamala then reached the only plausible alternative conclusion— that the meniscal tear on petitioner's imaging studies and as surgically observed must have been pre-existing in nature. However, as is undisputed, petitioner fell while traversing an uneven railway track carrying a heavy curtain, causing his knee to buckle and dislocate.

This misapprehension of the underlying injury was compounded by second-hand interpretations of an operative report by Drs. Bailey and Fadel. Both doctors concluded that petitioner's meniscal tear was degenerative on the sole basis of the operative report prepared by petitioner's physician, Dr. Whitfield. In that report, Dr. Whitfield described a "degenerative tear" of petitioner's medial meniscus. On this exclusive basis, both Drs. Bailey and Fadel concluded that petitioner's meniscal tear was degenerative; the OOJ accepted these conclusions wholesale.

However, in so doing, both Drs. Bailey and Fadel—as well as the OOJ and Board—wholly disregarded Dr. Whitfield's letter clarifying that while petitioner clearly had some degree of preexisting degeneration, he had no prior symptoms and therefore no evidence that the meniscal tear was already present. Accordingly, Dr. Whitfield clarified his own operative observation and opinion—upon which the other doctors exclusively relied—concluding that the meniscal tear was the result of the work injury. However, the OOJ construed Dr Whitfield's letter as "contradictory" to his operative report, rather than clarifying, disregarded it altogether, and summarily adopted the operative report as the "better evidence."

Both the Board and a majority of this Court affirmed. However, at no point has the Office of Judges, Board of Review, or the majority noted Dr. Mukkamala's total misapprehension of the mechanism of injury or explained how the mechanism of injury which caused petitioner to suffer a right knee sprain/strain is not entirely consistent with an associated meniscal tear, just as the treating surgeon concluded. Because the OOJ, Board, and majority's denial of compensability and resultant permanent partial disability rests upon an entirely faulty basis, I respectfully dissent. I am authorized to state that Justice Hutchison joins me in this dissent.

---

[2] Dr. Marsha Bailey also performed an independent medical examination of petitioner, but the OOJ disregarded her opinion on apportionment as an "outlier" because she found no impairment whatsoever. The OOJ made no mention of Dr. Fadel's records review in reaching its ultimate conclusion, which was affirmed by the Board.