## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**RICHARD D. SANDERS,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0419** (BOR Appeal No. 2055053)
                         (Claim No. 2018018094)

**MONONGALIA COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Richard D. Sanders, by Counsel J. Thomas Greene Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Monongalia County Board of Education, by Counsel Lisa Warner Hunter, filed a timely response.

The issue on appeal is medical benefits. The claims administrator denied a total right knee replacement on April 15, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its January 15, 2020, Order. The Order was affirmed by the Board of Review on May 27, 2020.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]
>
> . . . .

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

See *Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Sanders, a chief mechanic, injured his right knee in the course of his employment on February 5, 2018. Mr. Sanders had a history of right knee problems prior to the compensable injury. On June 17, 2008, he underwent a right knee arthroscopic chondroplasty lateral compartment and arthroscopic partial lateral meniscectomy. On June 30, 2008, William Post, M.D., found that Mr. Sanders was doing well post-surgery and could return to full duty work on July 14, 2008. Mr. Sanders returned to Dr. Post on November 11, 2010, and reported that he was pain free for six months after his right knee surgery. However, Mr. Sanders subsequently developed pain that had progressively worsened. He was currently off of work. Dr. Post diagnosed lateral meniscus tear, right knee joint effusion, lateral compartment osteoarthritis, and a lateral meniscal cyst. On December 6, 2010, Dr. Post noted that Mr. Sanders was back to working regular duty. It was also noted that an MRI showed a joint effusion and lateral meniscus tear. Mr. Sanders was given a steroid injection. Dr. Post stated that if the injection did not work, surgery should be considered.

Mr. Sanders returned to Dr. Post on February 28, 2011, and reported that his symptoms had worsened. The steroid injection provided only three days of pain relief. Dr. Post recommended surgery. On June 7, 2011, Dr. Post performed an arthroscopic partial lateral meniscectomy, chondroplasty of the lateral compartments, and meniscal cyst decompression. At the June 16, 2011, post-operative evaluation, Dr. Post recommended rehabilitation but found that Mr. Sanders had good results so far. Mr. Sanders returned for follow-up on July 7, 2011, and was to continue rehabilitation and remain off of work. On August 1, 2011, Mr. Sanders reported that his right knee had improved, and he was released to return to full duty work the following day. Mr. Sanders again sought treatment on September 21, 2011. He reported that he had developed a lot of swelling and pain in his right knee. He stated that his job duties required thirteen to fourteen hours a day of walking and going up and down steps. Dr. Post prescribed a brace and rehabilitation. He stated that Mr. Sanders was severely overworking his knee and recommended rest.

Mr. Sanders sought treatment from Dr. Post for his work-related injury on February 15, 2018. Dr. Post noted that Mr. Sanders slipped at work several days prior and injured his right knee. X-rays showed lateral joint space narrowing, lateral compartment osteophytes, and subchondral

2

sclerosis. There was a collapse of lateral joint space with bone-on-bone changes present. Dr. Post diagnosed right quadriceps strain, right medial collateral ligament sprain, effusion, and right knee osteoarthritis. Mr. Sanders was given a knee brace. The claim was held compensable for right quadriceps strain on February 16, 2018.

In a March 29, 2018, treatment note, Dr. Post stated that though Mr. Sanders had some osteoarthritis prior to the compensable injury, he had no symptoms immediately prior to the injury. On May 2, 2018, it was noted that Mr. Sanders recently underwent an MRI which showed joint effusion, a lateral meniscus tear, and degenerative arthrosis. Dr. Post recommended surgery. He opined that though Mr. Sanders had osteoarthritis, he was doing fine prior to the injury. The claims administrator authorized arthroscopic right knee lateral meniscus surgery on May 10, 2018. Dr. Post performed the surgery on June 1, 2018. On July 5, 2018, Mr. Sanders reported that he still had pain and swelling but had seen some improvement. On August 6, 2018, Mr. Sanders was still having some pain and swelling but had seen more improvement. He was released to return to full duty.

On October 4, 2018, Mr. Sanders returned with increased pain and swelling. Mr. Sanders's symptoms continued to worsen, and on December 10, 2018, he was prescribed an unloading knee brace to help his symptoms and decrease the risk of further injury. Dr. Post fitted Mr. Sanders for an unloading knee brace on March 7, 2019, at which time Mr. Sanders reported a further increase in pain and swelling. Dr. Post informed Mr. Sanders that if the brace did not help, a total right knee replacement would be necessary.

In a March 17, 2019, letter to the claims administrator, Dr. Post stated that he was appealing the February 26, 2019, claims administrator decision. He asserted that Mr. Sanders's condition clearly resulted from his compensable injury. Mr. Sanders had not yet been adequately treated for the compensable injury. He required a total right knee replacement. The claims administrator denied a total right knee replacement on April 15, 2019. In a May 15, 2019, Diagnosis update, Dr. Post requested the addition of right knee medial compartment ligament sprain and quadriceps strain to the claim. Dr. Post performed a total right knee replacement on May 28, 2019. The pre and post-operative diagnosis was osteoarthritis. In a June 10, 2019, follow-up, it was noted that Mr. Sanders's symptoms were worse overall. Mr. Sanders reported that he heard a loud pop in his knee while moving his leg and developed pain and instability in the knee.

Mr. Sanders testified in a deposition on July 22, 2019, that he had a right knee meniscus tear in 2011 for which he underwent surgery. He has not worked since May 29, 2019, due to the February 5, 2018, injury. Mr. Sanders stated that he tried nonsurgical treatment but saw no improvement, so he underwent a total right knee replacement.

P. Kent Thrush, M.D., performed an Independent Medical Evaluation on September 23, 2019, in which he noted that post-right knee replacement x-rays were excellent. Mr. Sanders's replacement appeared to be perfectly aligned and stable. Physical examination was normal. Dr. Thrush found that Mr. Sanders required no further treatment and could return to work. Dr. Thrush found no objective explanation for Mr. Sanders's subjective symptoms. Dr. Thrush noted that Dr. Post found advanced arthritis in the lateral compartment. Dr. Thrush noted that degenerative

3

arthritis is a progressive condition and given Mr. Sanders's age, weight, years of heavy labor, and prior 2011 surgery, it would be normal for him to develop progressive arthritis in the lateral compartment. Dr. Thrush opined that Mr. Sanders had moderate to advanced arthritis prior to the compensable injury, as seen on x-rays. He further opined that the total knee replacement was aimed at treating preexisting arthritis, not the compensable injury. The surgery was necessitated by wearing away of the articular cartilage. Dr. Thrush stated that a total knee replacement would not be an appropriate surgery for the compensable lateral meniscus tear. The compensable injury likely caused some progression of the preexisting arthritis, but Mr. Sanders would have likely required a total knee replacement regardless of the compensable injury because arthritis is a progressive condition.

The Office of Judges affirmed the claims administrator's denial of authorization for a total right knee replacement in its January 15, 2020, Order. It found that Mr. Sanders had a history of right knee issues that began in 2011 when he underwent arthroscopic surgery. Mr. Sanders underwent surgery on June 1, 2018, for a right knee lateral meniscus complex tear and then underwent a total right knee replacement on May 28, 2019. Mr. Sanders was evaluated by Dr. Thrush, who found that preexisting issues caused the need for a total right knee arthroscopy. The Office of Judges noted that the treating physician, Dr. Post, opined that the compensable injury exacerbated Mr. Sanders's preexisting arthritis. Dr. Thrush stated that while such may be true, a total knee arthroplasty is not an appropriate treatment for a torn meniscus. It is, however, treatment for advanced arthritis, which was seen on x-rays taken ten days after the compensable injury occurred. Further, arthroscopic findings showed right knee grade three degenerative changes. The Office of Judges found Dr. Thrush's opinion to be reliable and supported by a preponderance of the medical evidence. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 27, 2020.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1(a) workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. Further, West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. A preponderance of the evidence supports Dr. Thrush's opinion. The objective medical evidence shows that Mr. Sanders had moderate to severe arthritis prior to the compensable injury. As Dr. Thrush stated, the total right knee replacement was performed to treat severe arthritis, a noncompensable condition.

Affirmed.

**ISSUED:** October 4, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton