# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JAMES E. ELLIOTT,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0417** (BOR Appeal No. 2055041)
                          (Claim No. 2018011297)

**YOUTH SERVICES SYSTEMS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner James E. Elliott, by counsel William C. Gallagher, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Youth Services Systems, Inc., by counsel Lucinda Fluharty, filed a timely response.

The issue on appeal is medical treatment. The claims administrator denied a request for a right total knee replacement on March 13, 2019. On January 2, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision.  This appeal arises from the Board of Review's Order dated May 27, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W.Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of
> appeals shall consider the record provided by the board and give deference
> to the board's findings, reasoning and conclusions .

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W.Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. W. Va. Office Ins. Comm'r*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Elliott was employed as a maintenance worker for Youth Service Systems, Inc., of Wheeling, West Virginia. He injured his knee on October 17, 2017, while stepping off of a ladder while at work. A preliminary radiology report dated October 18, 2017, revealed advanced arthritis of the right medial compartment; however, there was no fracture or dislocation. The impression was an intact right knee. Mr. Elliott completed an Employees' and Physicians' Report of Injury on October 25, 2017, and the claims administrator held the claim compensable for strain of the right knee on November 15, 2017.

In a December 28, 2017, report, orthopedic surgeon Richard Glass, M.D., diagnosed Mr. Elliott with derangement of the posterior horn of the medial meniscus due to an old tear or injury of the right knee. Dr. Glass suggested arthroscopic surgery to evaluate the knee and remove any damaged cartilage. On January 15, 2018, the claims administrator authorized right knee arthroscopy. An operative report from Ohio Valley Medical Center dated February 8, 2018, indicates that Dr. Glass conducted arthroscopy of the right knee which produced postoperative diagnoses of torn medial meniscus of the posterior horn of the right knee and loose body in the right knee.

An Independent Medical Evaluation was conducted on June 8, 2018, by Joseph Grady, M.D., who assessed post right knee arthroscopic partial medial meniscectomy and loose body removal, persistent right knee pain, and status post partial medial meniscectomy superimposed on some preexisting degenerative changes. Dr. Grady found that he was at his maximum degree of medical improvement for any right quadriceps strain since it was not causing any of his current symptoms. Dr. Grady noted internal derangement of the right knee for which Mr. Elliott underwent a partial medial meniscectomy on February 8, 2018, by Dr. Glass. He was not found to be his maximum degree of medical improvement for the right knee. Dr. Grady recommended that he follow-up with his orthopedic surgeon for the possibility of invasive treatment. Dr. Grady subsequently provided an Addendum on July 23, 2018, resulting in a 1% permanent partial disability award on August 14, 2018.

A monthly follow-up visit report from Dr. Glass, dated September 13, 2018, indicated that Mr. Elliott's diagnosis included unspecified internal derangement of the right knee. It was also noted that the claims administrator approved an evaluation by a knee specialist. After evaluation, a Diagnosis Update request was made by Dr. Glass on September 24, 2018, for right knee derangement of the posterior horn of the medial meniscus, loose body in right knee, other tear of the right knee medial meniscus, and unspecified right knee internal derangement. Rebecca Thaxton, M.D., provided a Physician Review on October 18, 2018, for the claims administrator and reported diagnosis updates of right knee derangement, posterior horn medial meniscus tear, and loose body in the right knee. The discussed additional conditions were added to the claim by the claims administrator on October 25, 2018.

On September 28, 2018, Mr. Elliott was seen and evaluated by Carl Quinion, M.D, at Ohio State University, after referral from Dr. Glass. An x-ray performed during that examination revealed "severe medial joint space narrowing, subchondral sclerosis and osteophyte formation." Dr. Quinion reported he had a "long conversation with patient regarding treatment options for his condition including anti-inflammatory, bracing, physical therapy, and possible future need for arthroplasty." Mr. Elliott advised Dr. Quinion that he would like to follow-up with a surgeon to discuss partial versus total knee arthroplasty for his severe arthritis.

On November 21, 2018, Dr. Glass submitted a request for a total knee replacement. The request for total knee replacement surgery was reviewed by Dr. Thaxton, who in a Physician Review report dated January 14, 2019, opined that Mr. Elliott's knee symptoms pre-dated the injury in the claim and that he returned to a baseline level of function. Dr. Thaxton noted that the arthroplasty surgery on February 8, 2018, found "degenerative changes down to subchondral bone on the medial aspect of his tibial plateau and some mild degenerative changes in the medial femoral condyle." She further reported that an MRI from May 22, 2018, showed "advanced degenerative change of the medial compartment." Although the lateral meniscus was intact, there was "degenerative narrowing of the intervening joint space, myxoid degenerative change of the posterior horn of the medial meniscus, small effusion, small-ossified body lateral aspect of the suprapatellar bursa, and coincidental enchondroma within the distal femoral shaft." Dr. Thaxton opined that the changes observed were not acute changes related to the work injury, other than the absence of the medial meniscus. Dr. Thaxton recommended that authorization for total knee replacement be denied.

On January 22, 2019, the claims administrator issued an Order denying authorization for a right total knee replacement. Mr. Elliott grieved the claims administrator's decision, and on March 13, 2019, the StreetSelect Grievance Board Determination recommended the denial be affirmed. An Order was then issued on March 13, 2019, denying authorization of a right total knee replacement based upon Dr. Thaxton's recommendations. Mr. Elliott protested the claims administrator's denial of his request for right total knee replacement surgery.

Mr. Elliott submitted his deposition taken on April 23, 2019, where he testified that he has worked for the employer for a little over four years. On the day of injury, he was to patch a ceiling where plaster had fallen. While turning to get off the ladder, his knee snapped and popped, and he fell onto the floor. Mr. Elliott testified that he hurt his knee at work a year prior

to his injury while carrying furniture out of a house when the steps came away from the house. He was given anti-inflammatories and was able to continue working. He reported that his left knee has given out on him from time to time. Mr. Elliott listed his current pain level as being an "8" and stated that it never stops hurting.

Dr. Glass's deposition was taken on August 1, 2019, and he testified that Mr. Elliott's right knee condition is post-traumatic, not degenerative. He stated that the MRI of December 7, 2017, which was taken two months after the injury, noted a medial meniscus tear, which likely occurred as a result of the injury. It also showed a bone infarct involving the distal femoral shaft, which had probably been there for a long time and is not related to the injury. There was preexisting edema on both sides of the joint in the medial compartment related to degenerative disease and was not the result of the injury of October 17, 2017,. Dr. Glass noted that there were large areas of complete cartilage loss in the medial compartment that was not suggestive of something from the injury less than two months prior. Although Dr. Glass testified that the recommended total knee replacement would be for osteoarthritis of Mr. Elliott's knee, he stated "he probably has some traumatic arthritis that has caused the problem also." Dr. Glass also stated that nowhere in Dr. Quinion's report did he give an indication as to the etiology of Mr. Elliott's osteoarthritis. It was his opinion that the October 17, 2017, injury caused a discrete new injury; however, that discrete new injury was a medial meniscus tear.

Victoria Langa, M.D., a Board-certified orthopedic surgeon, issued a Record Review report on September 3, 2019. Dr. Langa opined that at the time of Mr. Elliott's injury, he already had documented preexisting degenerative arthritis in his right knee involving the medial joint compartment. The arthroscopic procedure confirmed the degenerative changes. She disagreed with Dr. Glass's description in the medical records that the degenerative arthritis is posttraumatic. Dr. Langa opined that there is nothing in the medical records to suggest that Mr. Elliott's degenerative arthritis is posttraumatic in nature. Because arthritis is not an accepted condition in the claim, Dr. Langa opined that the denial of the request for right total knee replacement was appropriate.

In an Order dated January 2, 2020, the Office of Judges affirmed the claims administrator's denial of right total knee replacement surgery. The Office of Judges found that the claims administrator's Order is supported by the January 14, 2019, Physician Review report of Dr. Thaxton. Dr. Thaxton determined that the total knee replacement would be for degenerative osteoarthritis of the right knee, which predated the current claim. Dr. Thaxton opined that total knee replacement should not be authorized. The Office of Judges also found that the claims administrator's denial of total knee replacement surgery is supported by the Record Review report of Dr. Langa, who disagreed with Dr. Glass's description of the degenerative arthritis being posttraumatic. Instead, Dr. Langa opined that the medical records document preexisting degenerative arthritis in Mr. Elliott's right knee. Because arthritis is not an accepted condition in the claim, Dr. Langa stated that the denial of the request for right total knee replacement was appropriate.

At deposition, Dr. Glass agreed that Mr. Elliott had preexisting degenerative changes of his right knee; however, Dr. Glass stated that he "probably has some traumatic arthritis that

cause the problem also." Dr. Glass testified that the October 17, 2017 injury caused a discrete new injury in the form of a medial meniscus tear. In addressing Dr. Glass's opinion that Mr. Elliott was in need of total knee arthroplasty for unilateral posttraumatic osteoarthritis of the right knee, the Office of Judges determined that the medical evidence fails to support a need for total knee replacement at this time and that the procedure would be due to a preexisting degenerative condition, which is not one of the compensable conditions in the claim. On May 27, 2020, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision to deny Mr. Elliott's request for total knee replacement surgery.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The evidence of record includes x-rays and an operative report from February 8, 2018, revealing preexisting degenerative conditions in Mr. Elliott's right knee. Dr. Thaxton and Dr. Langa opined that the preexisting degenerative arthritis was causing Mr. Elliott's knee problems and that surgery would not be warranted for any compensable condition in the claim. Thus, the preponderance of the evidence fails to support that Mr. Elliott is entitled to a total knee replacement for any approved condition in the claim, nor has he proved that such treatment is reasonable and necessary to treat his approved compensable conditions.

Affirmed.

**ISSUED: November 5, 2021**

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton