# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**TRI-STATE COATING & MACHINE CO., INC.,**
**Employer Below, Petitioner**

**vs.)    No. 21-0218** (BOR Appeal No. 2055971)
(Claim No. 2017021397)

**COLT M. TOMBLIN,**
**Claimant Below, Respondent**

# MEMORANDUM DECISION

Petitioner Tri-State Coating & Machine Co., Inc., by Counsel Lisa Warner Hunter, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Colt M. Tomblin, by Counsel Jerry D. Alford, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator granted an 11% permanent partial disability award on June 12, 2019. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its November 10, 2020, Order and granted a 19% permanent partial disability award. The Order was affirmed by the Board of Review on February 19, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

See *Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Tomblin, a shop worker, burned his right hand on a machine on February 14, 2017. On February 27, 2017, the claim was held compensable for right hand third degree burn. Mr. Tomblin underwent several evaluations to determine the amount of permanent impairment he sustained as a result of the compensable injury.

On May 7, 2019, David Soulsby, M.D., performed an Independent Medical Evaluation in which he noted that Mr. Tomblin suffered a third degree burn which required debridement and a skin graft. Mr. Tomblin's burn was 1% of the total body surface area. The skin graft took well, and Mr. Tomblin returned to full duty work on May 23, 2017. Mr. Tomblin reported to Dr. Soulsby that he still had numbness in his hand and fingers as well as diminished strength. Dr. Soulsby diagnosed healed burn injury and opined that Mr. Tomblin had reached maximum medical improvement. He also noted that Mr. Tomblin had some signs of carpal tunnel syndrome, which was not the result of the compensable injury. He assessed 17% upper extremity impairment, which converted to 10% whole person impairment for range of motion loss and 1% for impairment under Table 3 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) for a total of 11% whole person impairment. Based on Dr. Soulsby's report, the claims administrator granted an 11% permanent partial disability award on June 12, 2019.

In a July 29, 2019, Independent Medical Evaluation, Bruce Guberman, M.D., found that Mr. Tomblin had reached maximum medical improvement. He assessed 26% upper extremity impairment for range of motion loss, which converted to 16% whole person impairment. Dr. Guberman also assessed 2% impairment for Mr. Tomblin's scar, which still required treatment with lotion. Dr. Guberman's total impairment assessment was 18%. He therefore recommended Mr. Tomblin receive an additional 7% award.

In an October 17, 2019, addendum to his Independent Medical Evaluation, Dr. Soulsby stated that he reviewed Dr. Guberman's report. Dr. Soulsby opined that Dr. Guberman failed to determine the cause of the numbness on the volar aspect of Mr. Tomblin's hand. Dr. Guberman also failed to note signs of carpal tunnel syndrome. Dr. Soulsby opined that Dr. Guberman included

ratings for sensory loss in all five fingers, which Dr. Soulsby did not. Dr. Soulsby disagreed with Dr. Guberman's assessment of impairment for Mr. Tomblin's scar. He stated that the skin graft and scars were well-healed. Dr. Soulsby stated that the contractures in the soft tissue due to the scarring were accounted for in the range of motion assessment.

Prasadarao Mukkamala, M.D., performed an Independent Medical Evaluation on December 12, 2019, in which he noted that Mr. Tomblin's scar was not overly sensitive. It was not adhered to any underlying structures and could easily be moved around without discomfort. Dr. Mukkamala noted that Mr. Tomblin reported loss of sensation in his scar. After examination, Dr. Mukkamala assessed 5% impairment for range of motion loss and 1% impairment for Mr. Tomblin's scar under Table 2 of the AMA *Guides*, for a total of 6% whole person impairment. Dr. Mukkamala noted that Mr. Tomblin reported numbness outside of the range of his scar, which rendered the sensory impairment unreliable and was indicative of symptom magnification. Dr. Mukkamala disagreed with Dr. Soulsby's findings and concluded that Mr. Tomblin did not put forth maximum effort during Dr. Soulsby's testing. Dr. Mukkamala also disagreed with Dr. Guberman's findings and opined that they were unreliable for both range of motion and sensory findings.

Paul Bachwitt, M.D., performed an Independent Medical Evaluation on May 11, 2020, in which he noted that Mr. Tomblin reported loss of motion, strength, and sensation in right index, middle, right, and little fingers. After examination, Dr. Bachwitt assessed 18% whole person impairment for range of motion loss and 1% impairment for scarring for a total of 19% whole person impairment. Dr. Bachwitt noted that Mr. Tomblin had preexisting carpal tunnel syndrome. He also noted that he saw no signs of symptom magnification.

In a May 11, 2020, letter, Dr. Guberman stated that he reviewed Dr. Soulsby's addendum and Dr. Mukkamala's Independent Medical Evaluation. Regarding Dr. Soulsby's finding of carpal tunnel syndrome, Dr. Guberman stated that there is no indication in the medical records of preexisting carpal tunnel syndrome. He also found no indication that Mr. Tomblin had numbness in his right hand or fingers prior to the compensable injury. Dr. Guberman opined that to a reasonable degree of medical probability, Mr. Tomblin's right hand sensory loss is the result of his compensable burn injury and not carpal tunnel syndrome. Dr. Guberman stated that the difference in his range of motion measurements and Dr. Soulsby's mean Mr. Tomblin had not reached maximum medical improvement at the time of Dr. Soulsby's evaluation, or Mr. Tomblin gave better effort at his own evaluation. Dr. Guberman defended his assessment of 2% impairment for the scar by stating that the scar burns easily in the sun, was tender to the touch, and was sensitive to temperature. Regarding Dr. Mukkamala's report, Dr. Guberman disagreed with the finding of symptom magnification regarding Mr. Tomblin's reported numbness. Dr. Guberman opined that his own sensory evaluation results were valid and physiologically consistent. Dr. Guberman disagreed with Dr. Mukkamala's range of motion findings and opined that his own findings were more accurate.

In its November 10, 2020, Order, the Office of Judges reversed the claims administrator's grant of an 11% permanent partial disability award and instead granted a 19% award. It found that of the four evaluators of record, Dr. Mukkamala was the only physician to find evidence of

3

symptom magnification and was the only physician to find less than 11% impairment. The Office of Judges found the opinion to be unsupported by the evidentiary record. The Office of Judges found that Dr. Bachwitt is an orthopedic surgeon and recommended 19% impairment. Dr. Bachwitt did not calculate any impairment for Mr. Tomblin's alleged carpal tunnel syndrome. Further, the Office of Judges found his evaluation to be supported by that of Dr. Guberman, who found similar impairment attributable to the compensable injury. The Office of Judges noted that Mr. Tomblin is only in his mid-20s and works as a physical laborer. He sustained a severe burn injury to his dominant hand and can no longer use that had as efficiently as before the injury. The Office of Judges concluded that as an orthopedic surgeon, Dr. Bachwitt is well qualified to assess Mr. Tomblin's total impairment. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 19, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Of the four evaluations of record, Dr. Mukkamala's is clearly an outlier in terms of the amount of impairment and findings of symptoms magnification. The three remaining reports are all reliable. The Office of Judges relied on Dr. Bachwitt's conclusion because he is highly qualified to determine Mr. Tomblin's impairment and his opinion is supported by the evidentiary record. The Board of Review committed no error in affirming the Office of Judges' Order.

Affirmed.

**ISSUED: January 19, 2023**


**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

4