## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**GENESIS HEALTHCARE CORPORATION,**
**Employer Below, Petitioner**

**vs.)   No. 21-0500** (BOR Appeal No. 2056180)
              (Claim No. 2012031937)

**D. N.,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Genesis Healthcare Corporation, by counsel Daniel G. Murdock, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). D. N., by counsel Gregory S. Prudich, filed a timely response.[1]

The issue on appeal is compensability. The claims administrator denied a request to add major depressive disorder and generalized anxiety disorder on December 4, 2019. On December 4, 2020, the Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's decision and added the conditions as compensable components of the claim. This appeal arises from the Board of Review's Order dated May 20, 2021, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

---

[1]Consistent with our practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See* Rule 40 of the Rules of Appellate Procedure.

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

D. N., a nurse's aide, sustained an injury on February 2, 2012, when she struck her head on a television stand while picking a bag of trash off the floor. She was seen by Amanda Davis, PA-C, in the office of Barry K. Vaught, M.D., on February 15, 2012, for increased headaches related to her injury. Dr. Vaught had previously treated D. N. for migraine headaches.

D. N. underwent an Independent Medical Evaluation by Constantino Y. Amores, M.D., on August 6, 2013. D. N. reported that her headaches since the compensable injury were different than her regular migraine headaches. Dr. Amores noted that D. N. complained of paresthesia across the forehead, which was sensitive to touch and spread around both temples and the face. Dr. Amores opined that the current diagnoses and treatment were related to the compensable injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Amores found 10% permanent impairment. On September 6, 2013, Dr. Amores issued an addendum to his report and indicated that he was aware of D. N.'s pre-injury headaches and migraines. Dr. Amores concluded that D. N.'s headaches, together with other neurological symptoms, are different from the preexisting headaches that she had previously reported.

D. N. underwent a neuropsychological evaluation by Maria T. Moran, Ph.D., of the West Virginia University Department of Behavioral Medicine on August 20, 2014. Dr. Moran could not attribute her cognitive deficits to her injury in February of 2012. Dr. Moran concluded, "D. N. is experiencing a significant degree of emotional distress related to her nerve symptoms, and treatment with psychoactive mediation to address her depression is recommended." A Positron Emission Tomography evaluation was recommended to help clarify the etiology of D.N.'s condition.

D. N. was seen at Active Rehab Services, Inc., on March 16, 2015, by Krystal Dale, DPT. Upon examination, Dr. Dale noted head and neck mobility deficits and pain/burning/tingling associated with muscular spasm and headaches following her injury at work. Dr. Dale opined that D. N.'s rehabilitation potential to achieve her functional goals was good.

On July 24, 2015, D. N. was seen by Sara King, APRN, NP-C, for a follow-up evaluation after receiving a bilateral supraorbital nerve block. D. N. reported that the injection did not help, and she still complained of pain in the forehead region with a burning feeling. The assessment was migraine headaches and supraorbital neuritis. Ms. King advised D. N. to seek blood pressure treatment before the administering of a second supraorbital nerve block.

On July 18, 2016, D. N. treated with Nancy Ellen Kelley, M.D., for an evaluation of her headaches. Dr. Kelley's assessment was intractable chronic migraine without aura and without status migrainosus and intractable chronic post-traumatic headache. Dr. Kelley noted that the latter was nummular in the V1 distribution of the trigeminal nerve bilaterally. D. N. was seen by Kelly Pitsenbarger, M.D., to treat her blood pressure. She reported that she had suffered a headache for weeks. Dr. Pitsenbarger noted that her blood pressure was not controlled, and she was not to work until she was seen by Dr. Kelley.

D. N. was evaluated by Dr. Amores on February 2, 2018, who concluded that her current complaints were in whole or in part related to the compensable injury of February 2, 2012. Dr. Amores also found that she was at maximum medical improvement; however, she was not able to return to work at the time of the evaluation. Dr. Amores stated, "[t]he claimant's physical and mental status from the compensable injury may put her and other people at risk." Dr. Amores opined that the treatment she had received had been reasonable and medically necessary to treat the compensable injury. He believed it was reasonable and necessary for D. N. to undergo further treatment by a multidisciplinary team of a neurologist, a pain and rehabilitation specialist, and a neuropsychologist for behavioral modification and cognitive therapy. In an Independent Medical Evaluation dated October 3, 2018, Dr. Amores diagnosed D. N. with nummular headaches and migraine headaches. Dr. Amores opined that it was impossible to make a prognosis regarding the permanency of the headaches. He stated that the headaches were treatable with medication and that D. N. would best be treated under the care of a headache specialist for her nummular headaches.

D. N. was seen at Beckley ARH Medical Mall by Georgianna Richards, M.D., on July 11, 2019, where she reported having mixed headaches since her 2012 accident. D. N. was diagnosed with trigeminal neuralgia and chronic migraine. On September 11, 2019, D. N. was seen by Timothy Watson, PA-C, for her chronic headache disorder. During the examination, D. N. reported aches, numbness, depression, and anxiety. She also stated that she was having tingling and burning in her toes and that the left-side of her body was worse. Mr. Watson assessed chronic headache disorder, trigeminal neuralgia, and hypertensive disorder.

As a consequence of her ongoing mental health conditions, D. N. came under the care of Nick Jafary, M.D., of Beckley Psychiatric Services, who treated her from December 12, 2017, through January 17, 2020. During the course of his evaluations, D. N. expressed feelings of

3

sadness, feelings of discouragement regarding her future, a loss of interest in pleasurable activities, an increase in crying, restlessness/agitation, loss of energy, and moderate feelings of fatigue. She also reported irritability, concentration difficulties, and feelings of worthlessness. In an Office Report dated December 12, 2017, Dr. Jafary reported that D. N. expressed feelings of sadness, depression, and anxiety and that she did not have a desire to do anything. Dr. Jafary noted that all of D. N.'s symptoms started after her head injury and that she had no previous mood disorder. As a result, he diagnosed generalized anxiety disorder and major depressive disorder, recurrent mild. Dr. Jafary continued to treat D. N., and he consistently diagnosed her with generalized anxiety disorder and major depressive disorder.

On November 8, 2019, Dr. Jafary completed a Diagnosis Update form requesting that major depressive disorder and generalized anxiety disorder be added as compensable conditions in the claim. In an Order dated December 4, 2019, the claims administrator denied the request to add major depressive disorder and generalized anxiety disorder to the claim. D. N. protested the claims administrator's Order.

In support of her protest, D. N. was deposed on April 1, 2020, where she testified about the nature of her condition. She testified that as a consequence of her injury she has nummular headaches, which is a constant headache. D. N. described the symptoms from her nummular headaches as:

> It is like a throbbing sensation in the top of my head. I have a lot of symptoms like that. I have, like, a lot of burning in my forehead area. I have like, cutting, like, somebody taking the tip of a knife and just cutting my face. I have a lot of numbness and tingling in my facial area also.

D. N. explained the stress and strain resulting from her chronic condition and her belief that her depression and anxiety are related to her chronic compensable condition.

West Virginia Code of State Rules § 85-20-12.4 addresses psychiatric compensability for workers' compensation claims:

> 12.4. Compensability. Services may be approved to treat psychiatric problems only if they are a direct result of a compensable injury. As a prerequisite to coverage, the treating physician of record must send the injured worker for a consultation with a psychiatrist who shall examine the injured worker to determine 1) if a psychiatric problem exists; 2) whether the problem is directly related to the compensable condition; and 3) if so, the specific facts, circumstances, and other authorities relied upon to determine the causal relationship. The psychiatrist shall provide this information, and all other information required in section 8.1 of this Rule in his or her report. Failure to provide this information shall result in the denial of the additional psychiatric diagnosis. Based on that report, the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, will make a determination, in its sole discretion, whether the psychiatric condition is a consequence that flows directly from the compensable injury.

      a.  A Diagnosis Update Form WC-214 must be attached to the treating physician's report in order to request the psychiatric condition be added as an approved diagnosis.

Throughout D. N.'s medical record, various treating physicians and examiners have noted that she presents as being depressed and anxious. As a result, D. N. argued before the Office of Judges that major depressive disorder and generalized anxiety disorder, as diagnosed by Dr. Jafary, should be added as compensable components in her claim.

The Office of Judges found that D. N. has established by a preponderance of the evidence that she is entitled to the addition of major depressive disorder and generalized anxiety disorder as compensable components to the claim. The Office of Judges determined that, as a result of her compensable injury of February 2, 2012, she suffers from nummular headaches in the V1 distribution of the trigeminal nerve bilaterally. As a result, she experiences substantial pain at the top/front of her head, down to her forehead, and into her face. It was noted that D. N. had no psychiatric treatment history prior to her compensable injury. The Office of Judges reversed the claims administrator's Order dated December 4, 2019, which denied the request from Dr. Jafary to add major depressive disorder and generalized anxiety disorder as compensable conditions in the claim. The Board of Review adopted the findings and conclusions of the Office of Judges and affirmed the final decision on May 20, 2021.

On appeal before this Court, Genesis Healthcare Corporation argues that instead of applying the compensability criteria set forth in *Hale v. West Virginia Office of the Insurance Commissioner*, 228 W. Va. 781, 724 S.E.2d 752 (2012), the Office of Judges found that the medical records of Dr. Jafary meet the criteria set forth in West Virginia Code of State Rules § 85-20-12.4.[2] Genesis claims that, in doing so, the Office of Judges erred by circumventing and defeating the purpose of the rule, while allowing compensability to be determined under a preponderance of the evidence standard after the submission of additional evidence. The Petitioner, Genesis, contends that the very existence of § 85-20-12.4 exemplifies that the determination of the compensability of psychiatric conditions is more complicated than it is for physical injuries, and the claims administrator is entitled to be "aided by" that report in investigating the request to add conditions and determining compensability. Genesis also argues

---

[2] In *Hale*, this Court held that West Virginia Code of State Rules § 85-20-12.4 sets forth a three-step process that must be followed when a claimant is seeking to add a psychiatric disorder as a compensable injury in his/her workers' compensation claim: (1) the claimant's treating physician refers the claimant to a psychiatrist for an initial consultation; (2) following the initial psychiatric consultation, the psychiatrist is to make a detailed report consistent with the procedure described in W. Va. C.S.R. § 85-20-12.4; and (3) the claims administrator, aided by the psychiatrist's report, is to determine whether the psychiatric condition should be added as a compensable injury in the claim.

that the report must provide all of the information required under § 85-20-8.1[3] and that D. N. did not comply with the requirements for the addition of psychiatric conditions to the claim, so the claim should be remanded to the claims administrator.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-1, employees who receive injuries in the course of and as a result of their covered employment are entitled to benefits. For an injury to be compensable, it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The Office of Judges and Board of Review agreed that Dr. Jafary provided the required information to the claims administrator, including the conditions diagnosed, the relationship to the compensable injury, the proposed treatment, and whether D. N. had returned to work. In fact, Dr. Jafary provided years of treatment notes as well as a Diagnosis Update form and testified regarding the issue of compensability. The Board of Review's decision is supported by the evidence within the record.

Affirmed.

---

[3] West Virginia Code of State Rules § 85-20-8.1, provides that the following information must be included in the medical provider's report to the claims administrator for the consideration of treatment of psychiatric conditions:

a. The condition(s) diagnosed including ICD-9-CM codes and the objective and subjective findings.

b. Their relationship, if any, to the industrial injury or exposure.

c. Outline of proposed treatment program, its length, components, and expected prognosis including an estimate of when treatment should be concluded and condition(s) stable. An estimated return to work date should be included. The probability, if any, of permanent partial disability resulting from industrial conditions should be noted.

d. If the worker has not returned to work, the attending doctor should indicate whether a vocational assessment will be necessary to evaluate the worker's ability to return to work and why.

e. If the worker has not returned to work, a doctor's estimate of physical and functional capacities should be included with the report. If further information regarding physical and functional capacities is needed or required, a performance-based functional capacity evaluation can be requested. Functional capacity evaluations shall be conducted by a licensed health care provider approved by the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, to perform this testing.

**ISSUED: January 23, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

7