## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MATTHEW LYDICK,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0565** (BOR Appeal No. 2056361)
(Claim No. 2019023086)

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Matthew Lydick, by Counsel J. Thomas Greene Jr., appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Murray American Energy, by Counsel Aimee M. Stern, filed a timely response.

The issue on appeal is temporary total disability benefits. The claims administrator closed the claim for temporary total disability benefits on July 23, 2020. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its February 4, 2021, Order. The Order was affirmed by the Board of Review on June 16, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue

1

in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Lydick, a coal miner, suffered a left foot crush injury on May 3, 2019, when his foot was crushed when it got caught in the hydraulics of a bucket scoop. A treatment note from Wheeling Hospital Emergency Department that day indicates Mr. Lydick was seen for his left foot crush injury. He was unable to walk. X-rays were negative for fractures. He was diagnosed with the left foot crush injury. The Employees' and Physicians' Report of Injury, completed on May 3, 2019, indicates Mr. Lydick's left foot was crushed in a piece of machinery. The physicians' section was completed at Wheeling Hospital and lists the diagnosis as occupational left foot crush injury. Mr. Lydick was placed on modified duty with the restriction of no weight bearing on the left foot for three days.

In a May 6, 2019, treatment note, Clark Milton, D.O., stated that Mr. Lydick had difficulty walking. Physical examination showed ecchymosis and tenderness in the left foot. Dr. Milton diagnosed left foot metatarsals crush injury and stated that Mr. Lydick was unable to return to work. Mr. Lydick was seen by Ross Tennant, nurse practitioner for Dr. Milton, on May 9, 2019, and reported intermittent numbness and tingling in his left toes. However, the swelling and bruising were resolving. A left foot x-ray was negative for fractures. Mr. Tennant diagnosed left foot crush injury and recommended physical therapy, which Mr. Lydick declined. Mr. Tennant stated that Mr. Lydick was unable to return to work. The claim was held compensable for left foot crush injury on May 13, 2019.

In a May 16, 2019, treatment note, Mr. Tennant noted that Mr. Lydick reported intermittent numbness and tingling in his toes, however, the swelling and bruising had significantly improved. Mr. Tennant again recommended physical therapy and stated that Mr. Lydick was unable to return to work. Mr. Lydick attended physical therapy on May 20, 2019. A left foot MRI was performed on May 29, 2019, and showed an abnormal signal at the base of the third metatarsal of uncertain etiology. It was noted that it was nontraumatic in appearance. Mr. Lydick returned to Mr. Tennant on May 30, 2019, who stated that the left foot MRI showed a possible enchondroma of the third metatarsal. He believed Mr. Lydick was suffering from neuropraxia and recommended referral to a podiatrist. Mr. Lydick attended physical therapy on May 30, 2019.

In a June 25, 2019, treatment note, Danny Fljalkowski, D.P.M., noted that Mr. Lydick reported left foot pain with extreme sensitivity, as well as discoloration at the top of the left

forefoot. Physical examination revealed reduced sensation in the left forefoot as well as the second and third toes. Dr. Fljalkowski diagnosed left foot neuritis and crush injury. He recommended ultrasound and physical therapy. Mr. Lydick returned to Dr. Milton on July 11, 2019, and stated that he attempted to return to work but was only able to complete two shifts due to left foot pain. Mr. Lydick reported significant swelling as well as extreme sensitivity. Dr. Milton diagnosed left foot neuritis and recommended additional physical therapy.

Prasadarao Mukkamala, M.D., performed an Independent Medical Evaluation on July 31, 2019, in which he found reduced range of motion in the left ankle and foot as well as significant pain with stimuli. Dr. Mukkamala opined that Mr. Lydick may have complex regional pain syndrome and recommended a three phase bone scan. He did not believe Mr. Lydick had reached his maximum medical improvement.

A left foot X-ray was negative on August 9, 2019. On August 15, 2019, a three phase bone scan showed a possible radio occult fracture. An MRI was recommended. Mr. Lydick treated with Michael Bowman, M.D., of the Pittsburgh Foot and Hand Center, on August 30, 2019. Mr. Bowman diagnosed left foot crush injury which caused hypersensitivity to the superficial and deep perineal nerve. It was opined that Mr. Lydick could work sedentary duties and desensitization therapy was recommended as well as medications. In a September 25, 2019, treatment note, Dr. Milton diagnosed post traumatic metatarsalgia of uncertain etiology. He recommended Mr. Lydick undergo the desensitization therapy recommended by Dr. Bowman.

On October 23, 2019, Dr. Bowman stated that Mr. Lydick previously underwent therapy which provided no pain relief. Physical examination showed altered sensation at the dorsum of the left foot as well as a positive Tinel's sign at the deep perineal nerve and superficial perineal nerve. Dr. Bowman again diagnosed crush injury and recommended pain management. Dr. Milton diagnosed post traumatic metatarsalgia with symptoms potentially consistent with post traumatic neuropraxia on November 18, 2019. He recommended referral to pain management and stated Mr. Lydick was unable to work. Mr. Lydick was discharged from physical therapy on December 11, 2019. It was noted that he had reduced symptoms, but his foot remained hypersensitive.

In a December 16, 2019, Independent Medical Evaluation, Dr. Mukkamala noted that Mr. Lydick had limited activities of daily living. Physical examination showed reduced left ankle and foot range of motion, as well as hypersensitivity in the top of the left foot. Dr. Mukkamala disagreed with Dr. Bowman's recommendation for pain management and instead recommended Elavil.

On February 9, 2020, Dr. Milton agreed with Dr. Bowman's recommendation for a nerve block. Mr. Lydick returned to Mr. Tennant on April 6, 2019. It was noted that the left foot was tender, but Mr. Lydick was walking with a steady gait. He diagnosed post traumatic neuropraxia and stated Mr. Lydick was unable to work. On June 1, 2020, the diagnosis remained the same, and Mr. Lydick was still unable to return to work. Mr. Tennant completed an Attending Physician's Report on June 1, 2020, in which he opined that Mr. Lydick would remain temporarily and totally disabled through July 3, 2020.

Dr. Mukkamala performed an Independent Medical Evaluation on June 10, 2020, in which he noted that Mr. Lydick was not working and had limited activities of daily living. Examination showed reduced range of motion in the foot and ankle as well as hypersensitivity. Dr. Mukkamala diagnosed left foot crush injury with nonspecific pain complaints unsupported by objective pathology. He noted that Mr. Lydick had a significant degree of symptom magnification. He opined that Mr. Lydick had reached maximum medical improvement and needed no further treatment. Dr. Mukkamala further opined that Mr. Lydick was capable of returning to work and if he chose not to it was not the result of the compensable injury. Dr. Mukkamala assessed 4% impairment. Temporary total disability benefits were suspended on June 16, 2020, based on Dr. Mukkamala's evaluation.

In a July 1, 2020, treatment note, Mr. Tennant stated that Mr. Lydick reported no improvement. He had a resolving bruise on his second toe. Mr. Tennant again diagnosed post traumatic neuropraxia. He noted that Dr. Mukkamala found Mr. Lydick had reached maximum medical improvement. Mr. Tennant noted that Mr. Lydick stated he was unable to return to work as a coal miner. The claims administrator closed the claim for temporary total disability benefits on July 23, 2020. A July 29, 2020, treatment note from Wheeling Hospital Emergency Department indicates Mr. Lydick was seen for increased left foot pain for the past two days.

Mr. Lydick testified in an October 15, 2020, deposition that he was not receiving any medical care at that time. He asserted that his left foot was too sensitive to be touched and that he had constant foot pain with swelling after activity. Mr. Lydick stated that he was unable to do his normal activities of life and that he had sleep disturbances due to his left foot issues. He asserted that he had no prior left foot symptoms or injuries. In a treatment note dated November 2, 2020, Dr. Bowman noted that Mr. Lydick continued to have hypersensitivity in the top of the left foot. He again recommended desensitization therapy as well as medication.

The Office of Judges affirmed the claims administrator's closure of the claim for temporary total disability benefits in its February 4, 2021, Order. It found that Mr. Lydick has consistently reported hypersensitivity, swelling, occasional bruising, altered gait, and reduced activities of daily living. However, the Office of Judges found that Mr. Lydick failed to introduce sufficient evidence to show that his foot would improve with additional treatment or that Dr. Mukkamala's finding of maximum medical improvement was wrong. Lastly, the Office of Judges noted his condition had not changed in many months, which strongly suggests that the condition has plateaued. It therefore concluded that the claim was properly closed for temporary total disability benefits. The Board of Review affirmed the Office of Judges' Order on June 16, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Pursuant to West Virginia Code § 23-4-7a, temporary total disability benefits will cease when Mr. Lydick has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. A preponderance of the evidence indicates Mr. Lydick's condition has plateaued. He has seen no improvement for several months, as noted by his treating physician. Mr. Lydick has failed to introduce sufficient evidence to refute Dr. Mukkamala's finding of maximum medical improvement. Therefore, the closure of the claim for temporary total disability benefits is affirmed.

4

Affirmed.

**ISSUED: April 5, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

WOOTON, J., dissenting:

The petitioner, a coal miner, suffered a serious crush injury to his left foot when it was caught in the hydraulics of a bucket scoop, resulting in debilitating pain and sensitivity of the foot to even the slightest touch.[1] Notwithstanding the treating physicians' attempts to find a treatment modality that afforded greater relief to the petitioner – because they hadn't given up on him, *see* text *infra* – his claim for temporary total disability benefits was closed on the basis of one physician's opinion that he had reached maximum medical improvement.

In this regard, this case follows what is becoming a disturbing pattern in cases involving work-related injuries: if an independent medical evaluator opines that a claimant has reached maximum medical improvement, or is exaggerating his or her symptoms, or is suffering from the effects of some other, pre-existing, condition, the claims administrator finds that single opinion to be more "reliable" than the combined opinions of all the other health care providers involved in the claimant's care. I find this trend very concerning, as it gives the appearance of "Have Gun Will Travel" justice in workers' compensation cases, with the opinions of treating physicians being shot down by those of physicians whose examinations of the claimants are focused on forensic issues, not treatment issues.

Even more concerning is that in its opinion, the majority bases its decision largely on the finding of the Board of Review that "a preponderance of the evidence indicates Mr. Lydick's condition has *plateaued*. He has seen no improvement for several months, as noted by his treating physician." (Emphasis added). My research indicates that only once before has this Court mentioned that a condition has plateaued, *see Blankenship v. Schneider Const. Co.*, No. 13-0444,

---

[1] The record indicates that at one point the petitioner attempted to return to work but was only able to complete two shifts due to left foot pain caused by the compression of his work boots.

5

2014 WL 3953978 (W. Va. Aug. 13, 2014) (memorandum decision), and in *Blankenship* there was no discussion as to the significance of this finding in determining whether a claimant is entitled to additional medical care under the Act. One can reasonably infer from the majority's opinion in this case that the door has now been opened to a new, and potent, defense in workers' compensation cases: if, after a period of treatment, a claimant's symptoms haven't improved for three to four months, the underlying condition has "plateaued" and there exists a presumption that the claimant has reached maximum medical improvement. Such a presumption presupposes that treatment of injuries will result in a steady, predictable, linear, and non-stop abatement of symptoms, a theory that is wholly unsupported in this record. Indeed, Dr. Milton, a treating physician, observed that "[t]his is a difficult situation. If indeed [petitioner's condition] is a complex regional pain syndrome, these cases tend to improve, *but the timeframe is unclear*." (Emphasis added).

In viewing the record as a whole, I am convinced that the petitioner was unfairly denied the desensitization therapy and medications his treatment physician recommended, and that his claim for temporary total disability benefits should not have been closed under the facts and circumstances of this case. For these reasons, I respectfully dissent.